[No. 29187-1-III.   Division Three.   January 5, 2012.]

THE STATE OF WASHINGTON, *Respondent*, v. THOMAS ALLEN
BUTLER, *Appellant*.

822

*Janet G. Gemberling* (of *Janet G. Gemberling PS*), for appellant.

*Steven J. Tucker, Prosecuting Attorney,* and *Mark E. Lindsey, Deputy,* for respondent.

¶1 SWEENEY, J. — This appeal follows convictions for first degree kidnapping, first degree burglary, conspiracy to commit first degree robbery, first degree robbery, and two counts of first degree assault. The defendant and another man broke into a home, intent on stealing drugs and money. The defendant pistol-whipped and seized one victim, and then threatened him at gunpoint. The defendant makes a number of assignments of error on appeal. He contends the court should have suppressed the statement he gave to police while he was a patient in the hospital because he was on medication and could not then voluntarily consent to the police interview. The court found and concluded otherwise, and we conclude that the court's findings are supported by the record and support the court's refusal to suppress the statement. The defendant also contends that any kidnapping was incidental to his robbery and therefore must be dismissed for insufficient evidence. We conclude that the kidnapping here did not merge with the robbery. We affirm the convictions.

## FACTS

¶2 Thomas Butler and Derick Taylor broke into a home occupied by Brandon Benson, Taylor Robertson, and Shelsey Carpenter on March 30, 2009. Mr. Butler and Mr. Taylor punched Mr. Benson in the face. Mr. Butler hit Mr. Benson in the face with a handgun and demanded drugs and money. Mr. Benson told Mr. Butler to take his wallet and television, but that he did not have any drugs. Mr. Benson also told Mr. Butler, "Let's go upstairs," hoping that

the commotion would wake up his roommates. Clerk's Papers (CP) at 185. Mr. Butler then dragged Mr. Benson out of bed and led him, at gunpoint, up the stairs to the home's main floor.

¶3 Meanwhile, Mr. Taylor rifled through the roommates' belongings and packed things to steal. Mr. Robertson was in his bedroom on the main floor; he woke up to the yelling and armed himself with a gun. He cracked open his bedroom door and saw Mr. Butler holding a gun to Mr. Benson's head and Mr. Taylor rummaging through things. Mr. Butler saw Mr. Robertson open the door, at which point he turned his gun from Mr. Benson to Mr. Robertson. Mr. Butler and Mr. Robertson exchanged gunshots; Mr. Butler was injured.

¶4 Police found Mr. Butler hiding underneath a neighbor's deck. He had two gunshot wounds. Mr. Butler was transported by ambulance to a hospital. He remained in a coma and in intensive care for several days. On April 6, Mr. Butler was still in the intensive care unit, but was no longer in a coma. On that date, Mr. Butler consented to a surgery to remove a bullet near his spine. Mr. Butler also met with Detective John Miller from the Spokane Police Department.

¶5 David Henry was the nurse assigned to Mr. Butler, and he controlled access to Mr. Butler. Mr. Henry concluded that Mr. Butler was well enough to speak to Detective Miller even though Mr. Butler was required to lay flat in a bed and was on pain medication. Detective Miller introduced himself and asked if Mr. Butler would speak with him. Detective Miller also concluded after talking to Mr. Butler that he was coherent enough to be interviewed. The detective then read Mr. Butler *Miranda*[1] warnings. Mr. Butler said he understood and agreed to talk to Detective Miller.

¶6 Mr. Butler did not complain of difficulty understanding and his answers to questions made sense to the detective. Detective Miller stopped the interview once Mr. Butler

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

became too tired to continue and was having difficulty speaking.

¶7 The State charged Mr. Butler with first degree kidnapping, first degree burglary, conspiracy to commit first degree robbery, three counts of first degree robbery, and two counts of first degree assault. Mr. Butler moved to suppress the statements he gave to Detective Miller in the hospital. He argued that he was too debilitated to give a knowing, voluntary, and intelligent waiver of his rights. He also argued that Detective Miller failed to assess whether Mr. Butler was coherent enough to answer questions. The court listened to testimony from Mr. Henry; Detective Miller; Mr. Butler; and Mr. Butler's mother, Colleen Butler. The court concluded that the interview did not implicate *Miranda* because it was noncustodial, but even if it was custodial, Mr. Butler had the necessary capacity to waive his *Miranda* rights. The court denied Mr. Butler's motion to suppress and entered appropriate supporting findings of fact and conclusions of law.

¶8 The prosecution then proceeded to a jury trial. The court included, on its own motion, a jury instruction on when the occupant of a home can defend himself and others with deadly force. Mr. Butler objected to the jury instruction as a comment on the evidence. The jury convicted Mr. Butler of first degree kidnapping, first degree burglary, conspiracy to commit first degree robbery, first degree robbery, and two counts of first degree assault, all while armed with a firearm.

## DISCUSSION

STATEMENTS TO POLICE—VOLUNTARY

¶9 Mr. Butler contends that the court erred by concluding that his statements to Detective Miller were free and voluntary. He argues that the record shows that he was on strong pain medications, bedridden, and therefore hardly capable of understanding what was going on and certainly not capable of intelligently consenting to talk to police.

¶10 Mr. Butler's challenge to the court's refusal to suppress his statements implicates two separate standards here on appeal: one (substantial evidence) we apply to the court's findings of fact, and the second (de novo) we apply to the court's conclusion that his statements were freely and voluntarily given. *State v. Grogan*, 147 Wn. App. 511, 516, 195 P.3d 1017 (2008). Mr. Butler does not challenge the trial court's findings, and we therefore accept them as true. *State v. Broadaway*, 133 Wn.2d 118, 131, 942 P.2d 363 (1997). So the only question before us is a question of law; that is, whether the court's factual findings support the court's conclusion that Mr. Butler's statements were free and voluntary.

¶11 The court concluded that Mr. Butler was not in custody, and that even if he was in custody, his statement was voluntary. We address both holdings in order.

¶12 The conclusion that a suspect is in custody turns on "whether a reasonable person in the individual's position would believe he or she was in police custody to a degree associated with formal arrest." *State v. Lorenz*, 152 Wn.2d 22, 36-37, 93 P.3d 133 (2004). "Custody" depends on "whether the defendant's movement was restricted at the time of questioning," and necessarily that the police restricted that movement. *Id.* "Custody" does not refer to whether police intend to arrest, whether the environment was coercive, or whether there was probable cause to arrest at the time of the questioning. *Id.* at 37. It refers instead to whether the suspect's movement is restricted at the time of questioning. *Id.* at 36-37.

¶13 In *State v. Kelter*, for example, the court addressed whether a suspect was in custody when police interviewed him in his hospital room. 71 Wn.2d 52, 54, 426 P.2d 500 (1967). Mr. Kelter was in the hospital and under investigation for causing a fatal car crash. The court refused to conclude that Mr. Kelter was in custody even though he was confined to his hospital room because he had not "been placed under arrest or otherwise restrained by

the police." *Id.* Mr. Kelter was restricted to a hospital room by his own injuries, not by police. Mr. Butler similarly was restricted to his hospital room because of his injuries. No police were stationed inside or outside Mr. Butler's room. And it was Mr. Butler's nurse, Mr. Henry, who ultimately controlled access to Mr. Butler. These facts support the court's conclusion that Mr. Butler was not in custody when he spoke with Detective Miller.

¶14 Moreover, custody or not, we, like the trial court, would conclude that Mr. Butler's statements were voluntary. A suspect can "voluntarily waive his *Miranda* rights even when he is in the hospital, on medication, and in pain." *United States v. George,* 987 F.2d 1428, 1430 (9th Cir. 1993). If a suspect speaks to police while on narcotic drugs, the admissibility of the statement depends on the "unique facts of the case." *State v. Gregory,* 79 Wn.2d 637, 642, 488 P.2d 757 (1971), *overruled on other grounds by State v. Rogers,* 83 Wn.2d 553, 520 P.2d 159 (1974). The court found that Mr. Gregory's "rationality" was not "hindered, diminished or in any manner affected by [codeine and Demerol]." *Id.* And that Mr. Gregory "freely and unhesitatingly answered questions" even though he was tired. *Id.*

¶15 Again, the facts supporting the court's refusal to suppress are unchallenged. Mr. Butler answered the detective's questions appropriately. Report of Proceedings at 29, 30; CP at 108. His attending nurse, Mr. Henry, thought he was well enough to speak to detectives. There is no showing that the detective took advantage of his weakened condition. Indeed he stopped the questioning when Mr. Butler became too tired to talk. Detective Miller read Mr. Butler the *Miranda* warnings. And Detective Miller left after the interview and did not arrest him until weeks later. CP at 108. We affirm the court's denial of Mr. Butler's motion to suppress his statements to police.

KIDNAPPING—SUFFICIENT EVIDENCE

¶16 Mr. Butler next argues that any kidnapping here was "incidental" to the robberies because abduction re-

quires restraint and the restraint here was merely incidental to the robbery and is not enough then to support an independent conviction for kidnapping. Br. of Appellant at 14. He argues that a kidnapping is incidental to another crime when it has "no independent purpose or injury." *State v. Brett*, 126 Wn.2d 136, 166, 892 P.2d 29 (1995). And here, he continues, the restraint of Mr. Benson was only to facilitate the robbery; it is merely incidental and therefore insufficient to independently support a kidnapping conviction.

¶17 The State, of course, must produce substantial evidence to support the elements of a crime. *State v. Werneth*, 147 Wn. App. 549, 552, 197 P.3d 1195 (2008). Whether the State has met that burden, a burden of production, is a question of law that we review de novo. *Id.* Whether there is sufficient evidence to support a conviction turns on " 'whether, after viewing the evidence most favorable to the State, *any rational trier of fact* could have found the essential elements of [the crime].' " *State v. Vladovic*, 99 Wn.2d 413, 424, 662 P.2d 853 (1983) (alteration in original) (quoting *State v. Green*, 94 Wn.2d 216, 221-22, 616 P.2d 628 (1980)). Deference is given to the trier of fact on issues of conflicting testimony, credibility of witnesses, and the general persuasiveness of the evidence. *State v. Thomas*, 150 Wn.2d 821, 874-75, 83 P.3d 970 (2004).

¶18 Robbery is "unlawfully tak[ing] personal property from the person of another or in his presence against his will by the use or threatened use of immediate force, violence, or fear of injury to that person or his property or the person or property of anyone." Former RCW 9A.56.190 (1975). Robbery is elevated to first degree robbery if the robber inflicts bodily injury, is armed with a deadly weapon, or displays what appears to be a firearm or other deadly weapon. RCW 9A.56.200. Kidnapping in the first degree, on the other hand, includes

intentionally abduct[ing] another person with intent:

. . . .

(b) To facilitate commission of any felony or flight thereafter; or

(c) To inflict bodily injury on him; or

(d) To inflict extreme mental distress on him or a third person.

Former RCW 9A.40.020(1) (1975). "Abduct" is "restrain[ing] a person by either (a) secreting or holding him in a place where he is not likely to be found, or (b) using or threatening to use deadly force." Former RCW 9A.40.010(2) (1975). "Restrain" is "restrict[ing] a person's movements without consent and without legal authority in a manner which interferes substantially with his liberty." Former RCW 9A.40.010(1).

¶19 Mr. Butler relies on the analysis set out in *State v. Korum*,[2] among other cases, for his contention that the kidnapping here was incidental to the robbery and that there was not enough of a showing by the State, independent of the robbery, to support the conviction for kidnapping. Br. of Appellant at 15. We reject the contention for a number of reasons.

¶20 First, like any case law precedent, *Korum* has to be put in its proper factual context before it can be properly applied. And *Korum* was decided in a very different context than what we have here. In *Korum*, the Court of Appeals was charged with deciding whether a prosecutor vindictively overcharged a defendant in retribution for successfully moving to set aside a guilty plea. *Korum*, 120 Wn. App. at 689-90. The court begins its analysis with a discussion of the prosecutorial standards set out in RCW 9.94A.411, including that " '[c]rimes which do not merge as a matter of law, but which arise from the same course of conduct, do not all have to be charged.' " *Id.* at 702 (emphasis omitted) (quoting former RCW 9.94A.440(2) (1996), *recodified as* RCW 9.94A.411(2)). The court then cited to federal author-

---

[2] 120 Wn. App. 686, 703, 86 P.3d 166 (2004), *aff'd in part, rev'd in part on other grounds*, 157 Wn.2d 614, 141 P.3d 13 (2006).

ity that prohibits, or at least discourages, " 'without explanation, *increas[ing] the number of or severity of those charges* in circumstances which suggest that the increase is *retaliation for the defendant's assertion of statutory or constitutional rights.' " Id.* at 702 (quoting *Hardwick v. Doolittle,* 558 F.2d 292, 301 (5th Cir. 1977)). And, significantly, the court in *Korum* cites to the dissent in *Vladovic,*[3] not the majority opinion, to voice its concern over the pyramiding of charges by a prosecutor. *Id.* at 704. Ultimately, the court concluded that "the State's stacking of multiple kidnapping charges following Korum's plea withdrawal was not consistent with the legislature's directives in former RCW 9.94A.440(2) [(now RCW 9.94A.411)]." *Id.* at 703.

¶21 But here we are not concerned with prosecutorial vindictiveness or the State's overcharging Mr. Butler. And that brings us to our next point, which is that the controlling Supreme Court authority here is set out in *Vladovic.* That case resolves these questions on the basis of merger principles. *Vladovic,* 99 Wn.2d at 418-22.

¶22 In *Vladovic,* the court holds that the controlling principles here are those of the merger doctrine, with its attendant inquiry into legislative intent, not whether one crime was "incidental" to another:

> Our only apparent divergence from the above analysis [merger analysis] occurred in *State v. Allen,* 94 Wn.2d 860, 621 P.2d 143 (1980), which petitioner relies upon. In *Allen* we determined that, under the facts of that case, the kidnapping was separate and distinct from the robbery and thus the case fell within an exception to the merger doctrine set forth in *Johnson* I [*State v. Johnson,* 92 Wn.2d 671, 600 P.2d 1249 (1979)]. There is dictum in *Allen* to the effect that had the kidnapping merely been incidental to the robbery, the former offense would have "merge[d] into the robbery as a matter of law." *Allen,* at 864. That statement is not in accord with either *Johnson* I or II [*State v. Johnson,* 96 Wn.2d 926, 639 P.2d 1332

---

[3] 99 Wn.2d at 430.

(1982)] and we do not now adhere to it. We reaffirm our holdings that the merger doctrine is a rule of statutory construction which only applies where the Legislature has clearly indicated that in order to prove a particular degree of crime (*e.g.*, first degree rape) the State must prove not only that a defendant committed that crime (*e.g.*, rape) but that the crime was accompanied by an act which is defined as a crime elsewhere in the criminal statutes (*e.g.*, assault or kidnapping). Pursuant to this rule, kidnapping does not merge into first degree robbery.

*Id.* at 420-21 (third alteration in original).

¶23 The court's later opinion in *In re Personal Restraint of Fletcher* also reflects this approach. 113 Wn.2d 42, 52, 776 P.2d 114 (1989) (citing *Vladovic*, 99 Wn.2d at 421). There the court says that robbery and kidnapping do not merge because a person does not need to abduct and commit another crime to commit kidnapping; a person need only abduct and do so with *intent* to commit another crime. *Id.* This means that robbery, or any other crime, is not an element of kidnapping. *See id.* at 53. So, the merger doctrine does not apply to kidnapping. *Id.*

¶24 The Supreme Court again endorsed this approach in *State v. Louis*, 155 Wn.2d 563, 570-71, 120 P.3d 936 (2005) (affirming robbery and kidnapping convictions of Louis, who robbed jewelry store owners at gunpoint and left them bound inside the store's bathroom). Here there is no suggestion by counsel or in the statutory schemes of kidnapping and robbery that the legislature intended that one "merge" with the other. Former RCW 9A.40.020; former RCW 9A.56.190.

¶25 Finally, on this point the evidence here also supports separate convictions for each crime in this case. Again, whether the evidence is sufficient to support the elements of a crime is a question of law. *Green*, 94 Wn.2d at 220-21. But, that said, the necessary considerations to answer the sufficiency question in this context certainly seem essentially factual: that is, whether one crime is "incidental" to

another seems to turn on factual rather than legal considerations. *Korum*, 120 Wn. App. at 707. Indeed, it has been described as a "fact-specific" determination. *State v. Elmore*, 154 Wn. App. 885, 901, 228 P.3d 760 ("Thus, whether the kidnapping is incidental to the commission of other crimes is a fact-specific determination."), *review denied*, 169 Wn.2d 1018 (2010). Whether one crime is incidental to another might better be left to the trier of fact than to the court. Nonetheless, the facts here, when viewed objectively, support the jury's conviction for kidnapping independent of the robbery conviction.

¶26 Mr. Butler punched Mr. Benson in the face. Mr. Butler then hit Mr. Benson in the face with a handgun and demanded drugs and money. Mr. Benson told Mr. Butler to take his wallet and television, but that he did not have any drugs. Mr. Butler then dragged Mr. Benson out of bed and led him, at gunpoint, up the stairs to the home's main floor. Mr. Robertson cracked open his bedroom door and saw Mr. Butler holding a gun to Mr. Benson's head and Mr. Taylor rummaging through things nearby. Mr. Butler saw Mr. Robertson open the door, at which point he turned his gun from Mr. Benson to Mr. Robertson. This factual scenario then easily supports a kidnapping conviction independent of the robbery and it does not then merge with the robbery conviction. *See Louis*, 155 Wn.2d at 566-67, 570-71.

CONSPIRACY TO COMMIT ROBBERY

¶27 Mr. Butler next contends that the State's showing is not sufficient to support a conviction for conspiracy to commit first degree robbery because the State failed to show any agreement between him and Mr. Taylor to commit first degree robbery.

¶28 Again, whether there is sufficient evidence to support a conviction depends on " 'whether, after viewing the evidence most favorable to the State, *any rational trier of fact* could have found the essential elements of [the crime].' " *Vladovic*, 99 Wn.2d at 424 (alteration in original)

(quoting *Green*, 94 Wn.2d at 221-22). Again, we defer to the trier of fact on issues of conflicting testimony, credibility, and the general persuasiveness of the evidence. *Thomas*, 150 Wn.2d at 874-75.

■ ■ ¶29 Criminal conspiracy requires "intent that conduct constituting a crime be performed, [agreeing] with one or more persons to engage in or cause the performance of such conduct, and any one of them tak[ing] a substantial step in pursuance of such agreement." RCW 9A.28.040(1). The State must show that an actual agreement existed. *State v. Pacheco*, 125 Wn.2d 150, 159, 882 P.2d 183 (1994). This agreement can be informal. *State v. Barnes*, 85 Wn. App. 638, 664, 932 P.2d 669 (1997). And the State can use circumstantial evidence to show the agreement. *State v. King*, 113 Wn. App. 243, 284, 54 P.3d 1218 (2002). This circumstantial evidence can be in the form of declarations, acts, or conduct, or by a concert of action. *Barnes*, 85 Wn. App. at 664.

■ ¶30 The evidence here when viewed most favorably to the State shows that Mr. Butler and Mr. Taylor beat Mr. Benson at the same time and that while Mr. Butler held a gun to Mr. Benson, Mr. Taylor rifled through items in the home and gathered items to steal. These are concerted actions from which the jury could have inferred that Mr. Butler and Mr. Taylor agreed to divide their efforts—Mr. Butler had the job of strong-arming residents and Mr. Taylor had the job of gathering items to steal. Strong-arming a person while stealing from that person is first degree robbery. *See former* RCW 9A.56.190; RCW 9A.56-.200(1)(a). This circumstantial evidence is sufficient to support the conspiracy to commit first degree robbery.

Self-Defense Instruction—Homeowner Victim

¶31 Mr. Butler next contends that the judge improperly commented on the case and injected himself into the proceedings by instructing the jury on a homeowner's right to use deadly force.

¶32 We review the court's choice of jury instructions for abuse of discretion. *State v. Lucky*, 128 Wn.2d 727, 731, 912 P.2d 483 (1996), *overruled on other grounds by State v. Berlin*, 133 Wn.2d 541, 947 P.2d 700 (1997). We, however, review claims of legal error, including whether the instruction amounts to a comment on the evidence, de novo. *State v. Levy*, 156 Wn.2d 709, 721, 132 P.3d 1076 (2006). Each instruction is considered in the context of the "instructions as a whole" rather than in isolation. *State v. Benn*, 120 Wn.2d 631, 654-55, 845 P.2d 289 (1993). Here, the court instructed the jury that Mr. Robertson had the right to use deadly force:

> The use of deadly force by a homeowner or person in possession of premises is justifiable when committed in the lawful defense of the homeowner or any person in the homeowner's presence or company when:
>
> (1) the homeowner reasonably believed that the person in question or others whom the homeowner reasonably believed were acting in concert with the person in question intended to commit a felony or to inflict death or great personal injury;
>
> (2) the homeowner reasonably believed that there was imminent danger of such harm being accomplished; and
>
> (3) the homeowner employed such force and means as a reasonably prudent person would use under the same or similar conditions as they reasonably appeared to the homeowner, taking into consideration all the facts and circumstances as they appeared to him or her, at the time of the incident.

CP at 71 (Instruction 31).

¶33 Article IV, section 16 of the Washington State Constitution prohibits a judge from "conveying to the jury his or her personal attitudes toward the merits of the case." *State v. Becker*, 132 Wn.2d 54, 64, 935 P.2d 1321 (1997). If the court expresses its personal feelings on an element of an offense, it is a violation to do so even if the court's feelings are only implied. *State v. Jacobsen*, 78 Wn.2d 491, 495, 477 P.2d 1 (1970). Jury instructions that

"permit the parties to argue their theories of the case, do not mislead the jury, and properly inform the jury of the applicable law" are proper. *State v. Willis*, 153 Wn.2d 366, 370, 103 P.3d 1213 (2005).

¶34 Division One of this court has addressed facts similar to those presented here. In *State v. Malone*, the trial court sua sponte included an instruction telling the jury that an alleged rape victim's testimony did not need to be corroborated to find the defendant guilty of rape. 20 Wn. App. 712, 714, 582 P.2d 883 (1978). The defendant argued that this was a " 'negative' " instruction. *Id.* The court there held that this was not a comment on the evidence because it was a correct statement of the law, it was relevant to the issues at trial, and its phrasing did not reveal the trial court's opinion on the witness's credibility. *Id.* at 714-15.

¶35 *Malone*'s analysis is helpful here. Instruction 31 was a correct statement of the law. The court did not abuse its discretion by including it even though the jury did not have to decide whether Mr. Robertson acted in self-defense. The instruction became relevant with the conflicting testimony of Mr. Robertson and Mr. Butler on who fired first; both claimed the other fired first. Both also claimed that he shot in self-defense. And the wording of Instruction 31 did not prevent Mr. Butler from arguing his theory of the case or suggest to the jury which witnesses it should believe.

¶36 Instruction 31 accurately states the law, is relevant to the issues at trial, and does not suggest the court's opinion on the case.

¶37 We affirm the convictions.

¶38 The remainder of this opinion has no precedential value. Therefore, it will be filed for public record in accordance with the rules governing unpublished opinions.

Kulik, C.J., and Brown, J., concur.