## IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 35004-5-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| ELIJAH DEAN MANSON, | ) | |
| | ) | |
| Appellant. | ) | |

LAWRENCE-BERREY, J. — Elijah Dean Manson appeals after his conviction for the

crime of possession of a controlled substance—heroin. He argues: (1) his trial counsel

was ineffective for failing to object to evidence and for failing to request a limiting

instruction regarding that evidence, (2) the judge submitted a jury instruction that was an

improper comment on the evidence, and (3) cumulative error. We affirm.

## FACTS

Officer Jeremy Maiuri recognized Mr. Manson in his car and knew he had an

active warrant. Officer Maiuri directed Mr. Manson to pull over, and Mr. Manson

complied. As the officer approached Mr. Manson's car, he could see Mr. Manson

reaching down to his right side and putting his hands by his sides. Officer Maiuri ordered

Mr. Manson to keep his hands visible. When Mr. Manson did not comply, he was ordered out of his car.

As Mr. Manson got out of his car, Officer Maiuri ordered him to turn and place his hands behind his back. Mr. Manson turned with his hands up, made a strange motion with his hands, and placed them on top of his car. Officer Maiuri asked Mr. Manson if he had any objects that might stab him, and Mr. Manson replied he had a syringe in the pocket of a pair of pants still inside the car. Officer Maiuri handcuffed Mr. Manson, searched him, and placed him inside his patrol car.

Officer Kevin Huxoll arrived on the scene to assist Officer Maiuri. Officer Maiuri told Officer Huxoll about Mr. Manson's furtive movements, and Officer Huxoll sought and received consent from Mr. Manson to search his car. In addition to the syringe, the officers found a set of scales inside a boot and a spoon. Next, Officer Huxoll searched in the direction that Mr. Manson had made the strange hand movements. In some nearby grass opposite the car, he found a clear plastic "baggie" that contained heroin. Before Officer Huxoll could explain to Officer Maiuri what he found, Mr. Manson started yelling that whatever the officer found was not his and he would fight in court.

The State charged Mr. Manson with possession of a controlled substance—heroin, and unlawful use of drug paraphernalia. Mr. Manson had two trials. During the first

trial, the court dismissed with prejudice the charge of unlawful use of drug paraphernalia.

During its deliberations, the jury asked the court to define "dominion," in reference to a

jury instruction defining constructive possession. The jury later advised the court it could

not reach a verdict, and the court declared a mistrial and dismissed the jury.

At the second trial, Officer Maiuri testified he stopped Mr. Manson because he

recognized he had an active warrant. Officer Huxoll testified he knew Mr. Manson from

previous contacts. Mr. Manson did not object to either statement.

Later, the court instructed the jury. One instruction defined "possession." That

instruction read:

> Possession means having a substance in one's custody or control. It
> may be either actual or constructive. Actual possession occurs when the
> item is in the actual physical custody of the person charged with possession.
> Constructive possession occurs when there is no actual physical possession
> but there is dominion and control over the substance.
> Proximity alone without proof of dominion and control is
> insufficient to establish constructive possession. Dominion and control
> need not be exclusive to establish constructive possession.
> [In deciding whether the defendant had dominion and control over a
> substance, you are to consider all the relevant circumstances in the case.
> Factors that you may consider, among others, include [whether the
> defendant had the {immediate} ability to take actual possession of the
> substance,] [whether the defendant had the capacity to exclude others from
> possession of the substance,] [and] [whether the defendant had dominion
> and control over the premises where the substance was located]. No single
> one of these factors necessarily controls your decision.]

3

No. 35004-5-III
*State v. Manson*

Clerk's Papers (CP) at 52 (alterations in original). Neither party objected to this

instruction. The jury found Mr. Manson guilty of possession of a controlled substance—

heroin. The trial court later entered a judgment of conviction and sentenced Mr. Manson.

He appealed.

## ANALYSIS

A.    EFFECTIVE ASSISTANCE OF COUNSEL

Mr. Manson contends he received ineffective assistance when trial counsel failed

to object to one officer testifying that he stopped Mr. Manson for an active warrant and

another officer testifying that he knew Mr. Manson from prior contacts. He also contends

trial counsel was ineffective for failing to seek a limiting instruction. We do not believe

that trial counsel provided ineffective assistance.

To meaningfully protect the right to counsel, an accused is entitled to effective

assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686, 104 S. Ct. 2052, 80

L. Ed. 2d 674 (1984). Courts apply a two-pronged test to determine if counsel provided

effective assistance: (1) whether counsel performed deficiently, and (2) whether the

deficient performance prejudiced the defendant. *Id.* at 687. If a defendant fails to

establish one prong of the test, this court need not address the remaining prong. *State v.*

*Hendrickson*, 129 Wn.2d 61, 78, 917 P.2d 563 (1996). This is a mixed question of law

4

and fact, reviewed de novo. *Strickland*, 466 U.S. at 698.

To satisfy the first prong, the defendant must show that, after considering all the circumstances, counsel's performance fell below an objective standard of reasonableness. *State v. McFarland*, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995). The burden is on the defendant to show deficient performance. *State v. Grier*, 171 Wn.2d 17, 33, 246 P.3d 1260 (2011). We strongly presume trial counsel was effective. *Id.* When this court can characterize counsel's actions as legitimate trial tactics or strategy, we will not find ineffective assistance. *Id.*

### 1. *Decision not to object*

Mr. Manson argues that trial counsel should have stipulated to the lawfulness of his arrest or at least objected to the officers' testimonies. Being recognized as having an active warrant is not the worst thing that can precede an arrest. Had trial counsel stipulated to the lawfulness of the stop, the jury might have speculated about the underlying reason for the stop and possibly imagined worse things.

In addition, trial counsel's decision not to object to evidence is a classic example of trial tactics; only in egregious circumstances will it constitute deficient performance. *State v. Madison*, 53 Wn. App. 754, 763, 770 P.2d 662 (1989). Here, had trial counsel objected to the first officer's testimony about the basis for the arrest, the court might have

5

overruled the objection and thus caused increased attention to the somewhat negative testimony. Had trial counsel objected to the second officer's testimony about prior contact, the objection could have caused increased attention to the irrelevant evidence. The State did not discuss the warrant or prior contact any further in the case, including closing argument. We conclude that the decision to not stipulate and to not object constituted legitimate trial tactics so the jury would not speculate or overemphasize somewhat negative testimony.

### 2. *Decision not to seek a limiting instruction*

Mr. Manson also contends his counsel was deficient by failing to seek a limiting instruction about the above evidence. We presume that the decision not to seek a limiting instruction is a legitimate trial tactic to avoid highlighting unfavorable evidence to a jury. *State v. Humphries*, 181 Wn.2d 708, 720, 336 P.3d 1121 (2014). Mr. Manson argues that this "presumption is overcome when defense counsel made no attempt whatsoever to exclude the admission of such information in the first place." Br. of Appellant at 15. He provides no authority for this contention.

Instead, he cites *Humphries* and *State v. Price*, 126 Wn. App. 617, 109 P.3d 27 (2005), two cases holding that the decision to seek a limiting instruction was a trial tactic rather than ineffective assistance of counsel. He contends these two cases are

distinguishable on the basis that counsel in those cases at least attempted to exclude evidence. While those cases are distinguishable on that point, that distinction does not overcome the presumption. Had trial counsel requested a limiting instruction, either party could have discussed the somewhat negative facts in light of that instruction. This might have caused the jury to unintentionally emphasize that information.

Mr. Manson also argues that his trial counsel was "asleep at the wheel." Br. of Appellant at 17. The trial record rebuts this argument. Mr. Manson's trial counsel obtained a dismissal of the drug paraphernalia charge in the first trial and also a mistrial. A trial attorney "asleep at the wheel" would not have obtained such results.

We conclude Mr. Manson has not overcome the strong presumption that he received effective assistance of counsel.

B.      ERRONEOUS INSTRUCTION HARMLESS BEYOND A REASONABLE DOUBT

Mr. Manson argues the trial court improperly commented on the evidence when it instructed the jury on constructive possession despite insufficient evidence for such an instruction. We disagree.

Article IV, section 16 of the Washington Constitution provides: "Judges shall not charge juries with respect to matters of fact, nor comment thereon, but shall declare the law." This provision prohibits a judge from conveying their personal belief in the merits

of a cause or issue to the jury. *State v. Hughes*, 106 Wn.2d 176, 193, 721 P.2d 902 (1986). "An instruction does not constitute an impermissible comment on the evidence when there is sufficient evidence in the record to support it and when the instruction is an accurate statement of the law." *Id.* This court conducts a de novo review regarding whether a jury instruction amounts to a comment on the evidence. *State v. Butler*, 165 Wn. App. 820, 835, 269 P.3d 315 (2012).

It appears that the erroneous instruction was part of a set of instructions used for Mr. Manson's first trial. There, constructive possession of the drug paraphernalia in the car would have been at issue prior to dismissal of that charge. Trial court error implicating a constitutional right of a defendant will not cause a conviction to be reversed if the error was harmless beyond a reasonable doubt. *State v. Watt*, 160 Wn.2d 626, 635, 160 P.3d 640 (2007).

Here, Mr. Manson either possessed the baggie of heroin when he exited his car or he never possessed the contraband at all. The State argued that Mr. Manson actually possessed the contraband when he exited his car. Mr. Manson argued that he did not. The State never argued that Mr. Manson constructively possessed the contraband by its proximity nor would the erroneous instruction allow such an argument to be made.

We note that the first jury could not reach a verdict. The record establishes that the

jurors in the first trial were confused about what "dominion" meant. There is no evidence

that the second jury was similarly confused. Either Mr. Manson actually possessed the

baggie of heroin as he exited his car or he did not. We conclude that the erroneous

instruction could not have contributed to Mr. Manson's conviction and therefore was

harmless beyond a reasonable doubt.

C.     NO CUMULATIVE ERROR

Mr. Manson argues that his conviction should be reversed because of cumulative

errors. A reviewing court may reverse a conviction when several trial court errors,

insufficient to reverse in themselves, combine to deny a defendant a fair trial. *State v.*

*Greiff*, 141 Wn.2d 910, 929, 10 P.3d 390 (2000). Mr. Manson has only established one

error, an error that we concluded was harmless beyond a reasonable doubt. We therefore

reject his cumulative error argument.

D.     AWARD OF APPELLATE COSTS DEFERRED

By motion dated June 7, 2017, Mr. Manson raises various arguments why this

court should deny an award of appellate costs to the State. He argues (1) this division's

June 2016 general order conflicts with RAP 14.2, (2) funding the Office of Public

Defense (OPD) on the backs of indigent defendants creates a conflict of interest,

(3) imposing costs on indigent persons without assessing their ability to pay violates

9

substantive due process, and (4) this court should deny the State an award of appellate costs in accordance with RAP 14.2. We deny Mr. Manson's first three arguments and defer the last argument to our commissioner.

1. *Our June 2016 general order is not inconsistent with RAP 14.2*

This court's June 2016 general order requires a defendant who, on the basis of his or her indigency, wishes this court not to award the State appellate costs, to make a timely request and to submit a simple two-page form. The form assists this court in determining to what extent, if any, the defendant can pay an award of appellate costs.

Mr. Manson argues that the order conflicts with the presumption of continued indigency afforded by RAP 14.2. That rule presumes that a defendant, found to be indigent for purposes of appeal, remains indigent throughout the appeal. We disagree with Mr. Manson's argument. There is nothing in this court's June 2016 general order that alters the presumption of indigency.

2. *There is no evidence that OPD is funded on the backs of indigent defendants*

Mr. Manson argues that funding the OPD on the backs of indigent defendants creates a conflict of interest between appellate counsel and their clients. Mr. Manson's argument wrongly assumes that indigent defendants are required to pay appellate costs. RAP 14.2, as well as this court's June 2016 general order, is designed to prevent indigent

10

defendants from being burdened with appellate costs. Appellate costs are to be imposed only on those defendants who *are* capable of paying some or all of their appellate costs without resort to exempt monthly benefits.

Moreover, every appellate attorney must counsel his or her nonindigent client on the financial consequences of losing an appeal, including paying for one's own attorney's fees. If such candid discussions with nonindigent clients created an impermissible conflict of interest, the appellate system would crumble.

3. *Appellate costs are not imposed against defendants without first assessing their ability to pay*

Mr. Manson argues that imposing appellate costs on indigent persons without assessing their ability to pay violates substantive due process. Mr. Manson's argument wrongly assumes that courts impose appellate costs against defendants without first assessing their ability to pay. The current system does not impose appellate costs against defendants without first assessing their ability to pay. *See* RAP 14.2.

4. *We defer to our commissioner whether the State should be denied an award of appellate costs in accordance with RAP 14.2*

Mr. Manson requests that we deny the State an award of appellate costs in accordance with RAP 14.2. As permitted by that rule, we defer that question to our commissioner.

11

No. 35004-5-III
*State v. Manson*

Affirmed.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to

RCW 2.06.040.

Lawrence-Berrey, J.

WE CONCUR:

Fearing, C.J.

Korsmo, J.

12