IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 82291-8-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| KEVIN JAMES PERKINS, | ) | |
| | ) | |
| Appellant. | ) | |
| | ) | |

HAZELRIGG, J. — Kevin J. Perkins appeals from a conviction for kidnapping in the second degree and assault in the fourth degree after a jury trial. He contends there is insufficient evidence to sustain his kidnapping conviction, that his assault conviction violates double jeopardy, and that the court erred in calculating his offender score. Because there is insufficient evidence to demonstrate a completed kidnapping in the second degree, we remand for vacation of that conviction and entry of judgment for attempted kidnapping in the second degree. Further, we remand for a recalculation of Perkin's offender score under Blake.[1] We otherwise affirm the trial court.

FACTS

In September 2018, Kevin Perkins was charged with one count of attempted kidnapping in the first degree. The State later filed an amended information to add

---

[1] State v. Blake, 197 Wn.2d 170, 481 P.3d 521 (2021).

Citations and pinpoint citations are based on the Westlaw online version of the cited material.

a sexual motivation aggravator and a second count of attempted indecent liberties in the first degree. He was tried before a jury, who returned a guilty verdict on two lesser-included offenses: kidnapping in the second degree (with no aggravator) and assault in the fourth degree.[2] Perkins was sentenced to 84 months imprisonment for count one, and 364 days for count two, to run concurrently. He timely appeals.

## ANALYSIS

I.    Sufficiency

Perkins first argues there is insufficient evidence to convict him of a completed kidnapping, and instead he should be convicted of attempted kidnapping in the second degree. He focuses on the element of abduction, alleging there was insufficient evidence to demonstrate he secreted or hid N.M.

The State bears the burden to prove each element of a crime beyond a reasonable doubt. State v. Butler, 165 Wn. App. 820, 829, 269 P.3d 315 (2012). Whether there is sufficient evidence to sustain a conviction is a constitutional question of law we review de novo. State v. Rich, 184 Wn.2d 897, 903, 365 P.3d 746 (2016). We view all evidence in the light most favorable to the state to determine whether "'any rational trier of fact could have found the essential elements of kidnapping beyond a reasonable doubt.'" State v. Berg, 181 Wn.2d

_____

[2] During trial, Perkins sought a lesser included instruction on attempted kidnapping in the second degree. The State believed it had elicited sufficient testimony to support a conviction for a completed kidnapping, but could no longer amend the information to a completed kidnapping in the first degree, and argued for an instruction on completed kidnapping in the second degree as a lesser included offense. The trial court, based on the language of the statute, allowed instruction on kidnapping in the second degree (completed) as a lesser included of attempted kidnapping in the first degree. Because Perkins did not assign error to this ruling, we do not review it.

857, 867, 337 P.3d 310 (2014) (quoting State v. Green (Green II), 94 Wn.2d 216, 221–22, 616 P.2d 628 (1980)). We defer "to the trier of fact on issues of conflicting testimony, credibility of witnesses, and the general persuasiveness of the evidence." Butler, 165 Wn. App. at 829. "Circumstantial evidence and direct evidence are equally reliable." State v. Briejer, 172 Wn. App. 209, 217, 289 P.3d 698 (2012).

An individual commits kidnapping in the second degree if they "intentionally abduct[] another person under circumstances not amounting to kidnapping in the first degree." RCW 9A.40.030. "Abduct" is defined as restraining another person "by either (a) secreting or holding him or her in a place where he or she is not likely to be found, or (b) using or threatening to use deadly force." RCW 9A.40.010. The trial court's instructions to the jury defined "abduct" as "to restrain a person by secreting or holding the person in a place where that person is not likely to be found."

In considering whether a victim was secreted, we carefully examine "the setting of events and the physical surroundings." Green II, 94 Wn.2d at 226. For example, in State v. Stubsjoen, our court held there was sufficient evidence to sustain a kidnapping conviction despite the fact that the child victim was held "in public areas where the child could easily be seen" "virtually all of the time" the defendant had the victim. 48 Wn. App. 139, 144, 145–46, 738 P.2d 306 (1987). Because the defendant acted "as though the child was her own," the child's parent/guardian and law enforcement officers would be unlikely to find the child. Id. at 145. In Green II, our state Supreme Court found a victim was not secreted

- 3 -

because the victim's location was clearly visible "from the outside," and there was no evidence "of actual isolation from open public areas." 94 Wn.2d at 226. In State v. Billups, this court analyzed sufficiency in the context of an attempted kidnapping, finding the defendant had taken a substantial step by enticing two minors to get inside his van. 62 Wn. App. 122, 126–27, 813 P.2d 149 (1991). Had the victims complied and gotten inside of the van, he "would have been secreting or holding the girls in a place where they were not likely to be found." Id. at 127.

The State argues there is sufficient evidence to sustain the conviction for a completed kidnapping because one of the streets at the intersection where the incident took place is dark and not frequently travelled, the area is wooded, Perkins took the victim's cell phone, and the victim was far enough in the vehicle that her back was against the center console and her feet were off the ground (although her legs were outside of the vehicle and the vehicle door was open).

The State's evidence of the kidnapping largely relies on the victim's (N.M.) testimony. N.M. described the intersection and the chronology of the incident in detail. She went for a run near her home around 10:00 in the evening after telling her mother she was leaving. She ran along 272nd street after turning around and heading back toward her home. She testified there was "a light on the road, so it was not dark," and that "[l]ots of cars" were driving along the street. As she ran, she noticed a man (later identified as Perkins) outside his car, which was parked "by the light" on the side of the road. She noticed he was pretending to fix his tire but had no tools in his hand; she felt something was wrong and decided to turn around to avoid him. Perkins ran toward her and grabbed her, carrying her to his

car as she screamed. A fight ensued as Perkins tried to place N.M. into the car and she fought back, scratching him and kicking him. Perkins placed N.M. into the driver's seat and tried to move her to the passenger side, but N.M. fought to stay in the driver's seat with her legs out the open door.

On direct examination, the State asked N.M. numerous questions about her body position in the car; she testified her "bottom" was on the driver's seat with her back facing the passenger side against the center console. Her legs were outside the vehicle. Later in her testimony, she reiterated that her legs "were not on the seat," they were "[h]anging out of the side of the car," and her feet were off the ground. Although N.M. testified she did not walk along that route often, she went on walks or runs with her sister along 272nd street that summer.

Even taking the evidence in the light most favorable to the State, there is not sufficient evidence to demonstrate N.M. was "secreted" or hidden in a place she was unlikely to be found. The incident took place along a public road that N.M. described as being "not dark," with "lots of cars" driving by. Her mother knew she had gone out for a run and her sister knew the area as one they had run together. After Perkins grabbed her, N.M. was never fully in the car; she was able to keep herself out of the passenger seat and keep her legs outside the vehicle with the driver's side door open.

"[W]hen an appellate court finds the evidence insufficient to support a conviction for the charged offense," but a lesser offense was proved at trial, "it will direct a trial court to enter judgment on a lesser degree of the offense." State v. Garcia, 146 Wn. App. 821, 830, 193 P.3d 181 (2008). Here, the jury was instructed

on a variety of lesser-included offenses, including attempted kidnapping in the second degree. To convict on attempted kidnapping in the second degree, the State had to demonstrate beyond a reasonable doubt that Perkins took a substantial step toward the commission of that crime with the intent to commit that crime. N.M.'s testimony that Perkins grabbed her, placed her in his vehicle, and attempted to move her to the passenger seat, is sufficient to find a substantial step toward committing the crime of kidnapping in the second degree with the intent to do so. Perkins concedes this, and asks this court remand for entry of a conviction on attempted kidnapping in the second degree. We accept Perkin's concession and remand for the entry of an amended judgment.

II.     Double Jeopardy

Perkins next contends his convictions violate double jeopardy. He argues (1) the attempted kidnapping and assault convictions are the same in law and fact, (2) the assault and attempted kidnapping convictions merge, and (3) the jury instructions do not sufficiently protect against double jeopardy.

Our state and federal constitutions protect a defendant from suffering "'multiple punishments for the same offense.'" State v. Mutch, 171 Wn.2d 646, 661, 254 P.3d 803 (2011) (quoting State v. Noltie, 116 Wn.2d 831, 848, 809 P.2d 190 (1991)).[3] We review this question de novo. Id.

---

[3] See also U.S. CONST. amend. V; WASH. CONST. art. I, § 9.

A.    Same in Law and Fact

When a defendant has multiple convictions under different statutes, we apply the Blockburger[4] test to determine if the convictions are "the same in law and in fact." State v. Villanueva-Gonzalez, 180 Wn.2d 975, 981, 329 P.3d 78 (2014) (quoting State v. Adel, 136 Wn.2d 629, 632–33, 965 P.2d 1072 (1998)). "'If there is an element in each offense which is not included in the other,'" both convictions may stand. State v. Calle, 125 Wn.2d 769, 777, 888 P.2d 155 (1995) (quoting State v. Vladovic, 99 Wn.2d 413, 423, 662 P.2d 853 (1983)).

The State concedes there is no express authorization from our state legislature authorizing convictions for both kidnapping in the second degree and assault in the fourth degree.

Kidnapping in the second degree is governed by RCW 9A.40.030, while assault in the fourth degree is governed by 9A.36.041. As discussed earlier, kidnapping in the second degree involves intentionally abducting another person by secreting or holding them in a place where they will not be found or by use or threat of deadly force. RCW 9A.40.010(1), RCW 9A.40.030(1). Assault includes (1) an attempt to inflict bodily injury on another, (2) unlawful touching with criminal intent, and (3) placing another in apprehension of harm. State v. Frohs, 83 Wn. App. 803, 813, 924 P.2d 384 (1996).

The trial court's instructions to the jury defined attempted kidnapping in the second degree as "a substantial step toward the commission of" kidnapping in the second degree "with [the] intent to commit that crime." Kidnapping in the second

---

[4] Blockburger v. United States, 284 U.S. 299, 304, 52 S. Ct. 180, 76 L. Ed. 306 (1932).

degree was defined as occurring when an individual "intentionally abducts another person." Abduct was defined as "to restrain a person by secreting or holding the person in a place where that person is not likely to be found." Restrain was defined as "to restrict another's movements without consent and without legal authority." The court's instructions to the jury defined assault as "an intentional touching or striking of another person that is harmful or offensive regardless of whether any physical injury is done to the person," or "an act done with intent to inflict bodily injury," or "an act done with the intent to create in another apprehension and fear of bodily injury."

The court instructed the jury on attempted kidnapping in the second degree, and kidnapping in the second degree, as lesser-included offenses of attempted kidnapping in the first degree. It instructed the jury on assault in the second degree as a lesser-included offense of attempted indecent liberties. The attempted indecent liberties, and by extension the assault, was based on Perkins pulling N.M.'s down leggings several inches. The act of pulling N.M.'s leggings down several inches was necessary to accomplish "an intentional touching . . . that is harmful or offensive," but not necessary to accomplish a substantial step toward kidnapping. Likewise, kidnapping requires a substantial step toward abduction or restraining an individual, but assault does not require any abduction or restraint.

On the record before us, Perkins may properly be convicted of an attempted kidnapping in the second degree based on the substantial steps he took toward abducting N.M., and of assault in the fourth degree for the offensive touching.

B.     Merger

Likewise, Perkin's argument that the assault had no purpose other than to effectuate kidnapping fails.   The merger doctrine prohibits "punishment for an offense which the legislature has clearly intended is not to be punished separately from the greater offense."  State v. Garcia, 65 Wn. App. 681, 689, 829 P.2d 241 (1992).   "[S]uch intent has been found where proof of one crime is a necessary element or constitutes proof of another crime."  Id.

The State relied on Perkins's act of pulling down N.M.'s leggings several inches to support its allegation of assault in the fourth degree as an offensive touching.   This offensive touching was not required to abduct N.M.—she was already in Perkin's vehicle, and there was no evidence the act of pulling down her leggings three inches was in an effort to abduct or restrain N.M.   As such, the merger doctrine does not preclude conviction on both the attempted kidnapping and assault charges.

C.     Instructional Error

Perkins next alleges the jury instructions were deficient because they did not prevent the jury from convicting him of both kidnapping and assault based on the same conduct.

"We review challenges to jury instructions de novo, within the context of the jury instructions as a whole."  State v. Berg (Berg II), 147 Wn. App. 923, 931, 198 P.3d 529 (2008) (disapproved in part by Mutch, 171 Wn.2d 646).   Jury instructions must make it "manifestly apparent" to the jury that the State may not impose multiple punishments for the same offense.  Id.

In Mutch, our state Supreme Court found jury instructions were inadequate where no instruction "expressly stated that the jury must find that each charged count represents an act distinct from all other charged counts," and all of the to-convict instructions "were nearly identical, including that they all indicated the same time of occurrence of the criminal conduct." 171 Wn.2d at 662. This was error despite the fact that the jury was instructed "[a] separate crime is charged in each count. You must decide each count separately. Your verdict on one count should not control your verdict on any other count." Id.

The trial court here used an identical jury instruction as that in Mutch, with no additional instruction stating each charged count represents a distinct act. Each to-convict instruction also indicated the same period of time, similar to Mutch. However, Mutch considered more than the jury instructions alone in determining if there had been a double jeopardy violation. The court considered "the evidence, arguments, and instructions," to determine if it was "'manifestly apparent to the jury that the State [was] not seeking to impose multiple punishments for the same offense," and that the State based each count on a separate act. Id. at 664 (alterations in original) (quoting Berg II, 147 Wn. App. at 931). Indeed, the court in Mutch found that despite deficient jury instructions, there was no double jeopardy violation and upheld all five convictions. Id. at 665.

Again, the State was clear in its closing argument that the basis for the attempted indecent liberties (and lesser-included assault) was Perkin's act of pulling down N.M.'s pants. This made it "manifestly apparent" to the jury that the other acts that arguably could have been construed as supporting the assault

charge were in support of the attempted kidnapping in the first degree (and lesser included attempted kidnapping in the second degree), not the assault. Likewise, it was manifestly apparent to the jury that the act of pulling down N.M.'s pants several inches was not in support of an attempted kidnapping, but attempted indecent liberties (and assault in the fourth degree). The definitional instruction, which defines assault as "an intentional touching . . . that is harmful or offensive regardless of whether any physical injury is done," supports that each count was based on a separate act.

III.    Sentencing

Perkins finally argues he was sentenced on an incorrect offender score. The court counted two prior offenses as two separate points, though Perkins asserts they constitute the same criminal conduct and should have only been counted as one point. He also alleges he should be resentenced under Blake, which the State concedes.

We review a trial court's decision regarding same criminal conduct for an abuse of discretion or a misapplication of law. State v. Hatt, 11 Wn. App. 2d 113, 138, 452 P.3d 577 (2019). "Crimes constitute the same criminal conduct when they 'require the same criminal intent, are committed at the same time and place, and involve the same victim.'" State v. Chenoweth, 185 Wn.2d 218, 220, 370 P.3d 6 (2016). All three elements must be present to demonstrate the two crimes are the same criminal conduct. Id.

In 2008, Perkins was convicted of burglary and unlawful possession of a firearm. The firearms were stolen as part of the burglary. Perkins argues he had

the same criminal intent for the burglary and the unlawful possession (to possess the firearms) and they had the same victim (the owner of the firearms and other stolen property). The State counters that the victim of the burglary was the owner of the property and the victim of the unlawful possession of a firearm is the general public.

This court, and our state Supreme Court, have previously held that the victim of unlawful possession of a firearm is the general public. See State v. Haddock, 141 Wn.2d 103, 110–11, 3 P.3d 733 (2000); see also Hatt, 11 Wn. App. 2d at 142. In Haddock, the court explained that the victim of unlawful possession of a firearm was the general public, while the victim of possession of stolen firearms was the owner of the property. 141 Wn.2d at 111. While all crimes impact the general public, possessing stolen firearms "directly inflicted specific injury on individuals." Id.

While the guns Perkins possessed were stolen, he was not convicted of possessing stolen firearms, but unlawful possession of firearms under RCW 9.41.040(b) because he had previously been convicted of a felony. Our prior case law is clear that the public is the victim of this crime, while the victim of burglary is the owner of the property. As such, the crimes have different victims and are not the same criminal conduct.

We remand for vacation of the conviction for kidnapping in the second degree, entry of judgment for attempted kidnapping in the second degree and resentencing pursuant to Blake.

Reversed in part, affirmed in part and remanded.

WE CONCUR: