IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 39963-0-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| JUAN AGUILAR CAMACHO, | ) | |
| | ) | |
| Appellant. | ) | |

LAWRENCE-BERREY, C.J. — Juan Camacho appeals after a jury convicted him of

two counts of fourth degree assault and one count of felony harassment, threat to kill. He

challenges only the felony harassment conviction and argues the State presented

insufficient evidence to convict him of that charge. We disagree and affirm.

FACTS

By amended information, the State charged Juan Camacho with three counts of

fourth degree assault and one count of felony harassment, threat to kill. The conduct

supporting the jury's guilty verdicts occurred on July 23, 2022, soon after Camacho and

his wife, Guadalupe Salazar-Garcia (Salazar), began arguing at a party, and Salazar

wanted to leave. As the family approached their truck, Camacho acted as if he would

leave without Salazar. Salazar encouraged her children not to get in and suggested that she and her daughter, F.A.,[1] would walk home.

Camacho forced Salazar into the truck and began insulting her. He then tried to hit her, but she avoided being hit. When F.A. tried to help her mother, Camacho slapped F.A. across the face. Salazar was able to get out of the truck, and she gathered her children and they walked to a nearby police station.

At trial, the State questioned Salazar about what happened next:

> Q       Did [Camacho] follow you to the police station?
> A       Yes. He went along following me and—and he was going along saying things.
> Q       And what—what was he saying?
> A       That if I—that if I reported him to the police, he would kill me.
> Q       Did he say anything else?
> A       He said he would go to the house and he would bring a pistol and he would kill me.
> . . . .
> Q       Were you afraid?
> A       Yes.

Report of Proceedings (RP) at 245.

---

[1] To protect the privacy interests of the minor child, we use their initials throughout this opinion. Gen. Order 2012-1 of Division III, *In re the Use of Initials or Pseudonyms for Child Victims or Child Witnesses*, (Wash. Ct. App. June 18, 2012), https://www.courts.wa.gov/appellate_trial_courts/?fa=atc.genorders_orddisp&ordnumber =2012_001&div=III.

Camacho testified, and he denied he followed Salazar to the police station or threatened her. The only other witness to the events who testified was F.A., the couple's daughter.

F.A. described the interactions in and near the car similar to how her mother testified. On cross-examination, F.A. testified:

> Q    So, you and your mom walked into the police station?
> A    Yes.
> Q    Did your brothers come with you?
> A    Yes.
> Q    Did anybody else follow you to the police station?
> A    No.

RP at 317.

The jury convicted Camacho of the two assault charges and the felony harassment charge related to July 23, 2022, together with all aggravators, but acquitted him of the assault charge alleged to have occurred earlier. The trial court sentenced Camacho and ordered him to have no contact with either Salazar or F.A. for five years.[2]

## ANALYSIS

Camacho argues his conviction for harassment, threat to kill, must be vacated because the State presented insufficient evidence to convict him. More specifically, he

---

[2] In the judgment and sentence, the term of the no contact order protecting F.A. was both five years and two years. In a later order, the trial court clarified that the term was five years from when judgment had been entered.

3

argues that F.A. contradicted her mother's testimony that he threatened to kill her, and, without corroboration, no reasonable juror could have found him guilty of the offense. We disagree.

We review challenges to the sufficiency of the evidence for whether any rational trier of fact could have found guilt beyond a reasonable doubt. *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). We view the evidence in the light most favorable to the State, draw all reasonable inferences from the evidence in the State's favor, and interpret all evidence most strongly against the defendant. *Id.* A claim of insufficiency admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom. *Id.* We defer to the jury on issues of conflicting testimony, credibility of witnesses, and the general persuasiveness of the evidence. *State v. Butler*, 165 Wn. App. 820, 829, 269 P.3d 315 (2012); *see also State v. Camarillo*, 115 Wn.2d 60, 71, 794 P.2d 850 (1990) ("Credibility determinations are for the trier of fact and cannot be reviewed on appeal.").

Initially, it is unclear whether F.A. contradicted her mother. The testimonies of Salazar and F.A. are consistent with the notion that Camacho began following the family to the station but did not follow them into the station. Salazar did not testify how far Camacho followed the family. F.A. testified that her mother, brothers, and she walked into the police station, and that her father did not follow them. One reasonable inference

4

from her testimony is that her father did not follow the family into the police station.

Per *Salinas*, the truth of Salazar's testimony and the reasonable inference about F.A.'s

testimony are admitted. Regardless, the jury was entitled to believe Salazar that

Camacho threatened to kill her. We reject Camacho's sufficiency challenge.

Camacho encourages us to find a requirement that the evidence supporting the

threat to kill must be corroborated. He cites *State v. Stewart*, 52 Wash. 61, 100 P. 153

(1909), as well as *11 Washington Practice: Washington Pattern Jury Instructions:*

*Criminal* 45.02 (5th ed. 2021) (WPIC). Neither of these sources support his argument.

Beginning with *Stewart*, that case does not describe a generalized corroboration

requirement for criminal charges. Rather, it describes a corroboration requirement

statutorily required at that time for rape cases. *Id.* at 61. *Stewart*'s holding is no broader

than that.

Next, the comment to WPIC 45.02 refutes Camacho's argument:

> RCW 9A.44.020(1) states that it is not necessary for the testimony of an alleged rape victim to be corroborated. That statute made no change in the law. Since 1913, the law of Washington has followed the common law rule that no corroboration is necessary. *State v. Thomas*, 52 Wn.2d 255, 324 P.2d 821 (1958).
>
> The matter of corroboration is really a matter of sufficiency of the evidence. An instruction on this subject would be a negative instruction. The proving or disproving of such a charge is a factual problem, not a legal problem. *Whether a jury can or should accept the uncorroborated testimony of the prosecuting witnesses or the uncorroborated testimony of the defendant is best left to argument of counsel.*

5

(Emphasis added.) Whether to believe uncorroborated evidence is thus up to the jury, and we will not imply a corroboration requirement to prove threat to kill. We conclude that the State presented sufficient evidence to sustain the challenged conviction.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Lawrence-Berrey, C.J.

WE CONCUR:

_____          _____
Fearing, J.                                      Murphy, J.

6