**NOTICE: SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion. Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision. Slip opinions can be changed by subsequent court orders. For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion. Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports. An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.** The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports. Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>       Respondent,<br><br>  v.<br><br>DAVID Y. BOGDANOV,<br><br>       Appellant. | No. 56202-2-II<br><br><br>PUBLISHED OPINION |

CHE, J. — David Bogdanov killed NK by strangling her when they fought in Bogdanov's car after a sexual encounter. Bogdanov appeals his convictions for second degree murder and malicious harassment. At trial, Bogdanov did not deny that he killed NK. He argued that the homicide of NK was justifiable because he was acting in self-defense and excusable because NK's death was an accident. To that end, Bogdanov requested justifiable homicide jury instructions based on criminal Washington pattern jury instructions (WPIC) 16.02 and 16.03, which are patterned after RCW 9A.16.050(1) and (2), respectively.[1] The trial court issued an instruction based on WPIC 16.02 but declined to issue an instruction on WPIC 16.03.

We hold that the trial court's justifiable homicide instruction was adequate. We remand for the trial court to strike the community custody provision imposing supervision fees. We reject each of Bogdanov's remaining arguments. And we otherwise affirm.

---

[1] 11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL (5th ed. 2021).

No. 56202-2-II

FACTS

I. BACKGROUND

On June 5, 2019, Bogdanov was out drinking with his brother, Artur. And in the early hours of June 6, Bogdanov was waiting to pick up his brother, Stanislav, when he saw NK walking alone. Bogdanov approached her, inquired about her well-being, and gave her his coat. Bogdanov also gave her his contact information. Later that night, NK asked Bogdanov to pick her up. Bogdanov picked up NK and drove her to his sister's apartment in Vancouver, Washington, where he drank with NK. Subsequently, Artur drove Bogdanov and NK to a house in Brush Prairie.

Once there, Bogdanov and NK got into Bogdanov's Audi. After driving around, the two ended up back at the Brush Prairie house. Bogdanov testified that NK was in the back of the Audi smoking meth. Bogdanov was hoping to have sex with NK. He placed his gun between the driver's seat and the center console before entering the back of the Audi.

The two began having a sexual encounter. During the sexual encounter, Bogdanov learned that NK was transgender. Bogdanov shoved NK and said something to the effect of, "[W]hat the f[*]ck; what is this; you didn't tell me you were a dude. And started—started yelling at her to—said she's a disgusting—disgusting piece of crap." Rep. of Proc. (RP) at 1510.

Bogdanov testified that NK lunged at him, striking him in the face. Bogdanov shoved her, and she attempted to kick him. NK lunged for Bogdanov's gun between the driver seat and the center console. Bogdanov attempted to restrain her by pulling her jacket. But he was unable to restrain her as she continually elbowed him while reaching toward the gun.

2

No. 56202-2-II

To stop her, Bogdanov wrapped a nearby phone charging cable around her chest and pulled. The cable slipped around her neck. NK attempted to gouge out his eyes. Bogdanov continued pulling until NK stopped struggling. Shortly thereafter, Bogdanov realized she was dead.[2] Bogdanov took NK's body to Large Mountain and pushed it down a steep incline. After disposing of N.K.'s body, Bogdanov fled to Ukraine.

Bogdanov returned to Washington more than two months later, and law enforcement eventually arrested him. Bogdanov was driving a Ford Econoline van that belonged to Artur when he was arrested. The State charged Bogdanov with second degree murder and malicious harassment.

II. TRIAL

A.      *Judge's Characterization of the Case*

During a midtrial hardship voir dire of juror 1—without the other jurors present, the judge said,

> [Y]ou've been selected on this jury. It's a *major homicide case* in this county and can—do we have your assurance then—we're going to do everything we can to accommodate you, but you understand that we're at the mercy of all the other moving pieces in this. And can you assure us that you'll be able to pay attention and give your best effort, consistent with your juror oath?

RP at 858-59 (emphasis added). Bogdanov moved for a mistrial, arguing that the characterization of the case as a "major homicide case" constituted an improper comment on evidence. RP at 859.

---

[2] Dr. Martha Burt, a state forensic anthropologist, explained that with use of a ligature the interruption of blood flow to death is incredibly variable and could take anywhere from one to seven minutes. Loss of consciousness could be within seconds or a few minutes, depending on the pressure used. Dr. Burt further testified that loss of consciousness and death could occur in less than a minute.

No. 56202-2-II

The trial court stated that such a comment is "baked into the cake when you're here on a Murder 2nd Degree trial. It's a major—It is a homicide. It's a most severe version of the homi—well, murder." RP at 860. The trial court chose to not bring the juror back in because "it's sort of something that's just so patently obvious that I think it would be an ineffective remedy under the circumstances." RP at 860-61.

B.      *Van Evidence*

Bogdanov's brothers provided inconsistent testimony about which vans were involved during the night of the murder. Stanislav testified that Artur and Bogdanov were not driving around in Stanislav's Nissan van, but one of their vans. Artur testified that Bogdanov did not own any vehicles at the time of the murder, but Bogdanov was using Artur's Ford Econoline van.

Bogdanov had one van registered to him during the time of the murder, a GMC Savana van. Bogdanov testified that he was in Stanislav's Nissan van when he drove to Brush Prairie with NK, but the pair got into Bogdanov's Audi before he killed NK. More generally, it is not contested that Bogdanov was in the Audi when he killed NK.

The State introduced evidence regarding the search of two different vans. On December 17, 2019, the State searched the van that Bogdanov was in when he was arrested—Artur's Ford Econoline Van. The State sought to admit photographs taken during the search of the Ford van, including pictures of a fixed blade knife, a gun holster, a pocketknife, and an empty gun magazine. Bogdanov objected to the admission of that evidence based on a lack of foundation, relevance, and materiality. The trial court overruled that objection.

On January 2, 2020, the State searched the GMC Savana van registered to Bogdanov at the time of the murder. The State presented testimony regarding the contents of the GMC van,

4

No. 56202-2-II

including a pocketknife, handcuffs, a bloodstained t-shirt, and a roll of duct tape. The State elicited testimony about the various forms of testing it conducted upon select items in the van.

Bogdanov objected on multiple grounds and broadly argued that the evidence was irrelevant because "there's nothing in the police reports to suggest that these are, you know, implements of criminal activity in this case." RP at 1170. The State argued that it was "just trying to show that there was a thorough and complete investigation." RP at 1169-70. The State also argued that the knife would also be relevant for the self-defense claim. The trial court admitted the evidence. The trial court cautioned the State to be careful what it used the challenged evidence for because "there's no direct evidence of use of these things and it would be improper to suggest or imply those in any testimony or arguments." RP at 1172-73.

Later, the State elicited testimony that a string of beads was in the GMC van. Bogdanov objected, arguing that there was a lack foundation, and the beads were not relevant. The State argues that the beads could have belonged to the victim. The trial court overruled the objection and admitted the evidence.

Bogdanov moved for a mistrial, arguing that the State engaged in prosecutorial misconduct by seeking to admit the irrelevant contents of the GMC van under the completeness of the investigation grounds. The trial court denied the motion.

The State's argument as it pertains to the vans in closing was as follows:

Ladies and gentlemen, you've heard a lot about these searches of these vans that end up with not a lot of evidence. First of all, that is consistent with the testimony that you heard. What happened to [NK] didn't happen in those vans. [NK] might have been a passenger in one of those vans for a brief period of time that morning, but that was six months before those searches.

So not finding her DNA in those vans is consistent with the evidence.

5

No. 56202-2-II

RP at 1678. Bogdanov emphasized the weakness of the van evidence in closing by arguing that the vans were not where the self-defense took place, and evidence from the vans was not tied to the incident by DNA analysis or testimony.

C.      *Issues Regarding Bogdanov's Case-in-Chief*

Before Bogdanov's case-in-chief, he made an offer of proof to admit evidence that NK had been shot in a previous incident. Bogdanov's counsel explained that the testimony would be that NK saw Bogdanov place his gun in the front. Then, NK disclosed to Bogdanov "that she did not like guns necessar[il]y, but she was okay with it because she had been shot." RP at 1443. The trial court ruled that the defense could not elicit information about NK being a gunshot victim.

During the cross-examination of Bogdanov, the State elicited that he was about 6'2 and 200 pounds. The State further elicited that NK was about 5'8 and 130 pounds. The State asked, "At least by appearances, you could tell that you were significantly stronger than her[?]" RP at 1538. Bogdanov responded, "Yeah." RP at 1538. Later, the State asked, "You could have bear hugged her at any point in time, right?" RP at 1545. Bogdanov responded, "It was—that's kind of what I was trying to do. It wasn't working out. Nothing was working." RP at 1545.

D.      *Jury Instructions*

The trial court gave the following excusable homicide instruction based on WPIC 15.01,

> It is a defense to a charge of murder that the homicide was excusable as defined in this instruction.
>
> Homicide is excusable when committed by accident or misfortune in doing any lawful act by lawful means, without criminal negligence, or without any unlawful intent.

6

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 56202-2-II

> The State has the burden of proving the absence of excuse beyond a reasonable doubt. If you find that the State has not proved the absence of this defense beyond a reasonable doubt, it will be your duty to return a verdict of not guilty.

Clerk's Papers (CP) at 295.

Regarding the justifiable homicide defense, Bogdanov proposed jury instructions based on WPIC 16.02 and WPIC 16.03, which outline self-defense in relation to a reasonable apprehension of great personal injury and self-defense in the actual resistance to an attempt to commit a felony upon the slayer, respectively. Under the proposed WPIC 16.03 instruction, Bogdanov planned to argue that he committed justifiable homicide in actual resistance to NK's attempt to commit the felony of first degree assault.

The trial court gave the following justifiable homicide instruction based on WPIC 16.02,

> Homicide is justifiable when committed in the lawful defense of the slayer when:
>
> (1) the slayer reasonably believed that the person slain intended to inflict death or great personal injury;
>
> (2) the slayer reasonably believed that there was imminent danger of such harm being accomplished; and
>
> (3) the slayer employed such force and means as a reasonably prudent person would use under the same or similar conditions as they reasonably appeared to the slayer, taking into consideration all the facts and circumstances as they appeared to him, at the time of and prior to the incident.

CP at 297.

The trial court declined to give an instruction based on WPIC 16.03 because it reasoned that the instruction would be subsumed by the instruction being given based on WPIC 16.02. In pertinent part, WPIC 16.03 states,

7

No. 56202-2-II

> Homicide is justifiable when committed in the actual resistance of an attempt to commit a felony [upon the slayer] [in the presence of the slayer] [or] [upon or in a dwelling or other place of abode in which the slayer is present].

> The slayer may employ such force and means as a reasonably prudent person would use under the same or similar conditions as they reasonably appeared to the slayer, taking into consideration all the facts and circumstances as they appeared to [him] [her] at the time [and prior to] the incident.

The jury began deliberations in the afternoon on August 25.[3] At 5:03 p.m., the trial court released the jury. The next day, deliberations began at 8:30 a.m., and before 10 a.m., it appears the jury submitted two separate questions to the trial court—one about the difference between premeditation and intent, and the other about a concern over the jury's ability to reach a verdict.[4]

The State asked the trial court to instruct the jury that "without premeditation" is not an essential element of second degree murder and, in response to the hung jury issue, to continue deliberating. RP at 1816. Bogdanov objected to the State's proposal. After the trial court decided that it would read the State's supplemental premeditation instruction, Bogdanov moved for a mistrial, but the court denied his request. The trial court issued a supplementary instruction that stated,

> "Without premeditation" is not an essential element of the crime of Murder in the Second Degree that the State must prove beyond a reasonable doubt. The elements of the crime of Murder in the Second Degree are listed in Instruction No. 10.

> You are not to give this instruction special importance just because it was read separately. Consider it along with all of the instructions you have received.

---

[3] Later that afternoon, the trial court excused an ill juror and seated an alternate juror. The court reconstituted the jury around 4:15 p.m.

[4] The jury's written questions do not appear in the record.

8

No. 56202-2-II

CP at 309.[5]  The jury returned to deliberations.

At 1:47 p.m., the jury submitted another note that stated, "We have a concern with a juror; we believe she is unable to make a decision based on the facts.  While deliberating, she is unable to express the reasoning for her position.  And refuses to."  CP at 280 (most capitalization omitted).  In response, the trial court asked the presiding juror if the jury had a reached a verdict for one count and "if there [was] a reasonable probability of the jury reaching a verdict on the other Count?"  RP at 1832.

The presiding juror said that the jury had reached a verdict on one count.  But as to whether there was a reasonable probability of being able to reach a verdict on the other count, the presiding juror responded, "I don't believe so with the—the current jury we have."  RP at 1832.  The trial court asked the jury to hand the verdicts to the bailiff, but the presiding juror informed the court that they had not filled out the verdict forms yet.  In response, the trial court asked the jury to return to deliberation.  Additionally, the trial court said, "Follow your Instructions—I won't say anymore.  And if you do, in fact, have a verdict as to that one Count and not [] the other, whatever your decision is—once you are satisfied and have agreed on the decision, then we'll bring you back into court, okay?"  RP at 1833.

At 2:03 p.m., the jury submitted a note that stated,

> Can we replace a juror (1) and call in an alternate, if the current juror is unable to make decisions on factual evidence and is unwilling to deliberate further.  We feel it is a personal bias, with this (1) current juror.  She is refusing to continue to discuss her views.

---

[5] As part of its initial instructions to the jury, the trial court issued the following instruction: "A person commits the crime of Murder in the Second Degree when with intent to cause the death of another person but *without premeditation*, he or she causes the death of such person or of a third person unless the killing is excusable or justifiable."  CP at 291 (emphasis added).

9

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 56202-2-II

CP at 281 (most capitalization omitted). The trial court indicated it was planning on rereading its initial instruction regarding the duty to deliberate. Bogdanov moved for a mistrial on several grounds. The trial court denied Bogdanov's motion for a mistrial and reinstructed the jury about its duty to deliberate.

The next morning, the jury appears to have deliberated from around 8:30 a.m. to 9:35 a.m. The jury convicted Bogdanov on both counts. At sentencing, the trial court found that Bogdanov was indigent under RCW 10.101.010(3). But the trial court ordered Bogdanov to "pay supervision fees as determined by [the Department of Corrections]." CP at 326.

Bogdanov appeals.

## ANALYSIS

### I. JUSTIFIABLE HOMICIDE JURY INSTRUCTION

Bogdanov argues that the trial court erred by declining to issue a justifiable homicide instruction based on WPIC 16.03. We disagree.

We review the trial court's refusal to issue a justifiable homicide instruction for an abuse of discretion if the decision was based on a factual dispute or de novo if the decision was based on a ruling of law. *State v. Brightman*, 155 Wn.2d 506, 519, 122 P.3d 150 (2005). "'Jury instructions are sufficient when they allow counsel to argue their theory of the case, are not misleading, and when read as a whole properly inform the trier of fact of the applicable law.'" *State v. McCreven*, 170 Wn. App. 444, 462, 284 P.3d 793 (2012) (quoting *State v. Knutz*, 161 Wn. App. 395, 403, 253 P.3d 437 (2011)). The sufficiency of jury instructions is evaluated on a case by case basis.

10

No. 56202-2-II

Error occurs when the jury instructions, read as a whole, fail to "'make the relevant legal standard manifestly apparent to the average juror.'" *State v. Ackerman*, 11 Wn. App. 2d 304, 312, 453 P.3d 749 (2019) (quoting *State v. Corn*, 95 Wn. App. 41, 53, 975 P.2d 520 (1999)). The relevant legal standard is codified in RCW 9A.16.050, which provides,

> Homicide is also justifiable when committed either:
>
> (1) In the lawful defense of the slayer, or his or her husband, wife, parent, child, brother, or sister, or of any other person in his or her presence or company, when there is reasonable ground to apprehend a design on the part of the person slain to commit a felony or to do some great personal injury to the slayer or to any such person, and there is imminent danger of such design being accomplished; or
>
> (2) In the actual resistance of an attempt to commit a felony upon the slayer, in his or her presence, or upon or in a dwelling, or other place of abode, in which he or she is.

Where the defendant raises some credible evidence that the homicide occurred in circumstances that met the requirements of RCW 9A.16.050, the defendant is entitled to an instruction on justifiable homicide. *Brightman*, 155 Wn.2d at 520.

The requirements of RCW 9A.16.050(1) are met "where the defendant reasonably fears the person slain is *about to* commit a felony upon the slayer or inflict death or great personal injury, and there is *imminent* danger that the felony or injury will be accomplished." *Id.* at 520-21. WPIC 16.02 is patterned after RCW 9A.16.050(1). To meet the requirements of RCW 9A.16.050(2), "the defendant [must] act[] in *actual resistance* against an attempt to commit a felony on the slayer." *Brightman*, 155 Wn.2d at 521. WPIC 16.03 is patterned after RCW 9A.16.050(2). Under RCW 9A.16.050(1) and (2), the slayer's use of deadly force must be reasonably necessary under the circumstances. *Brightman*, 155 Wn.2d at 523.

11

No. 56202-2-II

A defendant is not entitled to repetitious instructions. *State v. Brenner*, 53 Wn. App. 367, 377, 768 P.2d 509 (1989), *overruled on other grounds by State v. Wentz*, 149 Wn.2d 342, 68 P.3d 282 (2003). In *Brenner*, the trial court instructed the jury that homicide is justifiable "when the defendant reasonably believes that the person slain intends to inflict death or great personal injury and there is imminent danger of such harm being accomplished." 53 Wn. App. at 375. But the trial court declined to instruct the jury regarding justifiable homicide in actual resistance of an attempt to commit a felony. *Id.* at 375.

Division One held that the given instruction correctly stated the law of self-defense and allowed the defendant to argue his theory of the case as he "could argue the more narrow actual resistance of a felony within the broader language of reasonable belief of intent." *Id.* at 376-77. Division One further noted that the proposed actual resistance instruction would have been repetitious with the instruction given "[b]ecause justifiable homicide is limited to felonies where the attack on the defendant's person threatens life or great bodily harm." *Id.* at 377. And in *State v. Boisselle*, Division One noted that the proposed WPIC 16.03 instruction was repetitious with the given WPIC 16.02 instruction because the defendant was already arguing that he was resisting death or great bodily harm under WPIC 16.02. 3 Wn. App. 2d 266, 291, 415 P.3d 621 (2018), *rev'd on other grounds*, 194 Wn.2d 1, 448 P.3d 19 (2019).

Here, the trial court found credible evidence to give both an excusable and justifiable homicide instruction. But the trial court declined to issue a justifiable homicide instruction based on WPIC 16.03 because that instruction would have been duplicative with the court's other justifiable homicide instruction based on WPIC 16.02. Accordingly, the trial court's decision was based on a ruling of law. As such, we review the trial court's decision de novo.

12

No. 56202-2-II

We hold the instruction the trial court gave under WPIC 16.02 was a correct statement of law that was not misleading. Given Bogdanov's defense theories, his proposed WPIC 16.03 instruction was repetitious with the given WPIC 16.02 instruction.

In closing, Bogdanov primarily argued that his homicide of NK was justifiable under RCW 9A.16.050(1) because NK was reaching for the gun to shoot him, which created a reasonable belief that NK intended to inflict death or great personal injury upon him. Bogdanov emphasized that he did not have time to reflect on his ability to restrain NK due to NK's combative conduct—striking him in the face, attempting to kick him, and not leaving the vehicle.

Based on the denied instruction, Bogdanov planned to argue that he committed justifiable homicide in actual resistance to NK's attempt to commit the felony of first degree assault.[6] To show first degree assault, Bogdanov thus pointed only to an argument that NK, with the intent to inflict great bodily harm, put Bogdanov in apprehension of harm by reaching for the gun to shoot him or attempted with unlawful force to inflict bodily injury upon him with the gun.

That line of argument would have focused on NK's attempt to grab the gun and shoot Bogdanov. It would likely have focused on whether Bogdanov's killing was reasonably necessary under the circumstances, which would involve discussing how combative NK was. Lastly, such argument would likely have focused on Bogdanov's apprehension of harm stemming from the aforementioned circumstances. All of these arguments could be made under

---

[6] First degree assault occurs in four situations, but relevant here, it occurs where an individual "with intent to inflict great bodily harm: (a) Assaults another with a firearm or any deadly weapon or by any force or means likely to produce great bodily harm or death." RCW 9A.36.011(1)(a). "Three definitions of assault are recognized in Washington: (1) an unlawful touching (actual battery); (2) an attempt with unlawful force to inflict bodily injury upon another, tending but failing to accomplish it (attempted battery); and (3) putting another in apprehension of harm." *State v. Elmi*, 166 Wn.2d 209, 215, 207 P.3d 439 (2009).

13

No. 56202-2-II

WPIC 16.02. And Bogdanov actually made these arguments to the jury in closing. None of these arguments were precluded by the decision not to give WPIC 16.03. Under these circumstances, we hold that the instruction given allowed Bogdanov to argue he actually resisted an attempt to commit first degree assault within the broader language of reasonable belief that NK intended to inflict death or great personal injury.

Citing *Ackerman*, Bogdanov argues the instructions are not repetitious because the use of deadly force may be reasonable under RCW 9A.16.050(2) even if there was no reasonable belief of imminent danger of death or great personal injury. In *Ackerman*, the trial court issued a verbatim WPIC 16.02 instruction and a modified WPIC 16.03 instruction. 11 Wn. App. 2d at 311. The modified instruction provided, "(1) The homicide is committed in the actual resistance of an attempt to commit a *violent* felony upon the slayer; (2) *The slayer reasonably believed that the violent felony threatens imminent danger of death or great personal injury; and . . . .*" *Id.* at 312. The trial court also issued an instruction that robbery is a felony, but did not specify whether it was a violent felony. *Id.*

Division One held that the justifiable homicide instructions failed to make the self-defense standard manifestly apparent because (1) the instructions diluted the State's burden by suggesting that robbery may not satisfy the requirements of justifiable homicide because it does not qualify as a violent felony, and (2) the instruction based on RCW 9A.16.050(2) added the requirement for the slayer to have a reasonable belief of "imminent danger of death or great personal injury." *Id.* at 313-14. As to the second ground, the *Ackerman* court implied that the use of deadly force to resist a robbery may be reasonable under RCW 9A.16.050(2), even if there is no reasonable belief of imminent danger of death or great personal injury. *Id.* at 314-15

14

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 56202-2-II

(explaining the instruction "misstated the requirements" of the statute "[b]y requiring the jury to also consider, in an instruction based on only subsection (2), whether there was a reasonable belief of imminent danger of death or great personal injury."). But "*Brightman* held that lethal force must be reasonably necessary, and 'necessary' means in response to a perceived threat to life or great personal injury." *State v. Brown*, 21 Wn. App. 2d 541, 564, 506 P.3d 1258, *review denied*, 199 Wn.2d 1029 (2022).

We conclude that *Brightman* is controlling, and we join *Brown* in declining to follow *Ackerman* on this issue. And more generally, we are not persuaded that *Ackerman* entitles Bogdanov to a WPIC 16.03 instruction under these facts. Consequently, we hold that there was no instructional error here.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

Bogdanov argues that he received ineffective assistance of counsel because his counsel failed to request a lesser-included offense instruction of manslaughter regarding his second degree murder charge. We disagree.

When the defendant claims ineffective assistance of counsel, he "bears the burden of establishing both 'that counsel's performance was deficient' and that 'the deficient performance prejudiced the defense.'" *State v. Carson*, 184 Wn.2d 207, 216, 357 P.3d 1064 (2015) (quoting *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)).

Where a jury found the defendant guilty of second degree murder, the Supreme Court held there was no prejudice for failure to request a lesser-included offense instruction because "assuming, as this court must, that the jury would not have convicted [the defendant] of second degree murder unless the State had met its burden of proof, the availability of a compromise

15

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 56202-2-II

verdict would not have changed the outcome of [the] trial." *State v. Grier*, 171 Wn.2d 17, 43-44, 246 P.3d 1260 (2011).

Here, even assuming Bogdanov could show that his counsel's failure to request a lesser included instruction was deficient, he cannot show that counsel's failure to do so was prejudicial. The jury found Bogdanov guilty beyond a reasonable doubt of second degree murder. We infer, as we must, that the jury convicted Bogdanov because the evidence showed he was guilty beyond a reasonable doubt. And so, the availability of a compromise verdict would not have changed the outcome of Bogdanov's trial. Accordingly, we hold that Bogdanov did not receive ineffective assistance of counsel.

### III. SUPPLEMENTAL JURY INSTRUCTION REGARDING THE ESSENTIAL ELEMENTS OF SECOND DEGREE MURDER

A.      *Abuse of Discretion*

Bogdanov appears to argue that the trial court abused its discretion by issuing the supplemental jury instruction regarding the elements of second degree murder. We disagree.

Trial courts have discretion to issue supplemental jury instructions after deliberation has begun. *State v. Ransom*, 56 Wn. App. 712, 714, 785 P.2d 469 (1990). Trial courts may abuse that discretion when their supplemental instructions "go beyond matters that either had been, or could have been, argued to the jury." *Id.*

Here, the trial court issued Instruction No. 7, which stated, "A person commits the crime of Murder in the Second Degree when with intent to cause the death of another person *but without premeditation*, he or she causes the death of such person or of a third person unless the

16

No. 56202-2-II

killing is excusable or justifiable." CP at 291 (emphasis added). The "without premeditation" language was not defined elsewhere in the original jury instructions.

After deliberations began, the jury appears to have submitted a question regarding the difference between premeditation and intent. In response, the trial court clarified the essential elements of second degree murder, by stating that "without premeditation" is not an essential element of second degree murder. CP at 309. Bogdanov does not argue that the trial court's supplemental instruction was an incorrect statement of law.

That instruction did not exceed matters that were argued or could have been argued to the jury, as the substance of the instruction was included in Instruction No. 7, which was issued before deliberation began. Instruction No. 7 defined the elements of second degree murder.

Accordingly, we hold that the trial court did not abuse its discretion by issuing the challenged supplemental instruction.

B.      *Judicial Comment*

Bogdanov also argues that the trial court's supplemental instruction was an improper judicial comment because it "was inartfully worded because it altered the perception of the burden of the State," and the trial court did not answer the jurors' question. Br. of Appellant at 35. We disagree.

We review the trial court's choice of jury instructions for an abuse of discretion, but we review whether the instruction constitutes a comment on the evidence de novo. *State v. Butler*, 165 Wn. App. 820, 835, 269 P.3d 315 (2012). "A judge is prohibited from expressing to the jury his or her personal attitudes regarding the merits of the case or instructing the jury that issues of fact have been established as a matter of law under article IV, section 16 of the Washington

17

No. 56202-2-II

Constitution." *State v. Gouley*, 19 Wn. App. 2d 185, 197, 494 P.3d 458 (2021), *review denied*, 198 Wn.2d 1041 (2022). Judicial comments on evidence are presumptively prejudicial. *Id.* The State has the burden to show that such comments did not prejudice the defendant unless the record affirmatively shows that no prejudice could have occurred. *Id.*

A jury instruction that merely states the law pertaining to an issue is not an impermissible comment on evidence. *Id.* For example, where a trial court issued an instruction that an alleged rape victim's testimony did not need to be corroborated to find the defendant guilty of rape, Division One held the instruction was not a comment on evidence because its phrasing did not reveal the trial court's opinion on witness credibility, it was a correct statement of the law, and it was relevant to the issues at trial. *State v. Malone*, 20 Wn. App. 712, 714-15, 582 P.2d 883 (1978).

Similarly, here the supplemental instruction merely stated the law pertaining to second degree murder. Bogdanov concedes that the instruction correctly stated the law. Bogdanov argues that the instruction could suggest that the State did not need to prove the intent element of second degree murder beyond a reasonable doubt. But the supplemental instruction does not even mention intent. Consequently, the instruction does not suggest that the State does not need to prove the intent element of second degree murder.

Additionally, Bogdanov relies upon *State v. Levy*[7] to argue that the court's instruction constituted an improper judicial comment. There, the Supreme Court held that the trial court's reference to a crowbar as a deadly weapon was an improper judicial comment because it suggested to the jury that the crowbar was a deadly weapon as a matter of law. *Levy*, 156 Wn.2d

_____

[7] 156 Wn.2d 709, 132 P.3d 1076 (2006).

18

No. 56202-2-II

at 722. Similarly, the court held that the trial court's reference to "the building of Kenya White" was an improper judicial comment because "the use of the word 'building' in the instruction improperly suggested to the jury that the apartment was a building as a matter of law." *Id.* at 721.

Bogdanov's reliance on *Levy* is inapposite. The supplemental instruction here does not suggest to the jury that it need not consider an element of second degree murder. Nor does the instruction reference any piece of evidence. Nor does the instruction's phrasing reveal the trial court's opinion of a witness's credibility. Rather, the instruction does no more than accurately state the law. Consequently, we hold that the supplemental instruction was not an improper judicial comment.

IV. JURY INSTRUCTION TO CONTINUE DELIBERATING

Bogdanov argues that the trial court erred by instructing the jury to continue deliberating after the jury reported that one juror was refusing to deliberate. We disagree.

A trial judge has broad discretion in determining whether to declare a mistrial. *State v. Barnes*, 85 Wn. App. 638, 656, 932 P.2d 669 (1997). As such, we review the trial court's denial of a mistrial for an abuse of discretion. *State v. Emery*, 174 Wn.2d 741, 765, 278 P.3d 653 (2012). Where no reasonable judge would have reached the same conclusion, the trial court abuses its discretion. *Id.*

A mistrial is warranted only where "the defendant has been so prejudiced that nothing short of a new trial can ensure that the defendant will be fairly tried." *Id.* When determining whether a jury is deadlocked, the trial court "may consider the length of jury deliberations relative to the length of the trial and the complexity of issues and evidence." *Barnes*, 85 Wn.

19

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 56202-2-II

App. at 656. The trial court may also rely on the representations of the presiding juror. *Id.* at 657. But more generally, "[t]here are no particular procedures that the court must follow in determining the probability of the jury reaching an agreement." *Id.*

Additionally, even where the jury is already deliberating, trial courts have a duty to investigate allegations of juror unfitness and to excuse jurors who are found to be unfit. *State v. Elmore*, 155 Wn.2d 758, 773, 123 P.3d 72 (2005). To that end, "[a] juror is unfit if he or she exhibits prejudice by refusing to follow the law or participate in deliberations." *Id.* When investigating jury problems, courts have broad discretion but must take care to not taint the jury nor disturb the contents of deliberation. *Id.* at 773-74.

When a juror accuses another juror of refusing to deliberate, the trial court should first reinstruct the jury. *Id.* at 774. If the problem persists, the court should engage in as limited inquiry as possible, prioritizing the secrecy of the jury deliberations. *Id.* Importantly, "prejudice occurs only where a court dismisses a juror without applying the appropriate evidentiary standard." *State v. Morfin*, 171 Wn. App. 1, 11, 287 P.3d 600 (2012).

Here, the trial lasted from August 17th until the 25th. The case involved more than 30 witnesses and more than 200 exhibits. Most of the evidence was indirect. There were two charges in this case, second degree murder and malicious harassment. Bogdanov argued that the homicide was both excusable and justifiable.

Jury deliberations began around 2:39 p.m. and the jury was reconstituted around 4:15 p.m. on August 25th. At 5:03 p.m., the trial court released the jury. The jury deliberated from around 8:30 a.m. to 4:57 p.m. the following day. The next day, the jury appears to have deliberated from 8:30 a.m. to 9:35 a.m., and then, the jury issued its verdict. In total, the jury

No. 56202-2-II

deliberated less than a day and a half for a six day murder trial. As such, the relative length of the deliberation compared against the length and complexity of the issues and evidence weighs against granting a mistrial.

The claimed error occurred on the second day of jury deliberations. That day, it appears the jury submitted three notes that indicated its inability to continue deliberations. In the morning, the jury appears to have submitted a question about the difference between premeditation and intent, and a note indicating the jury was concerned about its ability to reach a verdict.[8] After receiving those notes, the trial court issued the instruction clarifying the elements of second degree murder and sent the jury back to deliberate.

At 1:47 p.m., the jury informed the court that it believed one juror was unable to decide and would not deliberate. In response, the trial court asked the presiding juror if the jury had reached a verdict for one count and if there was "a reasonable probability of being able to reach a verdict on the other Count." RP at 1832. The presiding juror said that the jury had reached a verdict on one count. But as to whether there was a reasonable probability of being able to reach a verdict on the other count, the presiding juror responded, "I don't believe so with the—the current jury we have." RP at 1832.

The trial court asked the jury to hand the verdicts to the bailiff, but the presiding juror informed the court that they had not filled out the verdict forms yet. In response, the trial court asked the jury to return to deliberation. Additionally, the court said, "Follow your Instructions—I won't say anymore. And if you do, in fact, have a verdict as to that one Count

---

[8] These jury notes do not appear in the record, but the parties do not dispute their contents.

21

No. 56202-2-II

and not [] the other, whatever your decision is—once you are satisfied and have agreed on the decision, then we'll bring you back into court, okay?" RP at 1833.

The trial court's actions after the second note complied with *Elmore* because after receiving an allegation that a juror was refusing to deliberate, the court ordered the jury to continue deliberating. Just minutes later, the jury submitted a third note, asking if the trial court could replace the juror who was refusing to deliberate. The trial court chose to reinstruct the jury about its duty to deliberate.

As the jury submitted its third note minutes after the court's previous instruction, indicating they were having the same problem, the trial court could have engaged in an inquiry to explore juror misconduct. But the trial court does not abuse its discretion by not immediately engaging in this inquiry under *Elmore*. And in any case, the trial court took the more cautious route of reinstructing the jury, instead of engaging in questioning to ultimately dismiss a juror, which arguably would have been more likely to prejudice the jury or invade their secrecy.

Bogdanov relies on *State v. Fish*, 99 Wn. App. 86, 90, 992 P.2d 505 (1999) to argue that a mistrial was warranted. In *Fish*, Division One analyzed whether a mistrial based on deadlock was proper, not whether the trial court abuses its discretion by instructing the jury to continue deliberating instead of granting a mistrial. 99 Wn. App. at 90. As such, the case is not persuasive. Bogdanov also cites *State v. Dykstra*, 33 Wn. App. 648, 651, 656 P.2d 1137 (1983), which also analyzed whether a mistrial based on deadlock was proper. These cases are inapposite.

Given the length and complexity of this matter, and that the trial court took a cautious course of action in response to an allegation of juror misconduct, we hold that the trial court did

No. 56202-2-II

not abuse its discretion by reinstructing the jury on its duty to deliberate, instead of granting a mistrial.

## V. COMMUNITY CUSTODY SUPERVISION FEES

In Bogdanov's supplemental brief, he argues that the trial court erred when it imposed community custody supervision fees because he is indigent. The State concedes that the supervision fee should be stricken because the trial court found Bogdanov indigent. We accept the State's concession.

The trial court imposed "supervision fees as determined by [the Department of Corrections]." CP at 326. The imposition of community custody supervision fees used to be governed by former RCW 9.94A.703(2)(d) (2021). Effective July 1, 2022, the legislature amended RCW 9.94A.703 by removing the waivable condition to impose community custody supervision fees on defendants. *State v. Wemhoff*, 24 Wn. App. 2d 198, 199, 519 P.3d 297 (2022).

The amendment applies prospectively to cases on direct appeal. *Id.* at 202. Consequently, the amendment applies to Bogdanov's case. Thus, we remand for the trial court to strike the community custody provision imposing supervision fees.

## VI. STATEMENT OF ADDITIONAL GROUNDS

In Bogdanov's statement of additional grounds (SAG), he raises a myriad of issues. We reject each of his arguments.

A. *Judicial Comment*

Bogdanov argues that the trial court prejudiced him when the judge characterized his case as a "major homicidal case" in front of a juror. SAG at 1. We disagree.

23

No. 56202-2-II

"Judges shall not charge juries with respect to matters of fact, nor comment thereon, but shall declare the law." WASH. CONST. art. 4, § 16. To that end, a judge may not "'[convey] to the jury his or her personal attitudes toward the merits of the case' or instruct[] a jury that 'matters of fact have been established as a matter of law.'" *Levy*, 156 Wn.2d at 721 (quoting *State v. Becker*, 132 Wn.2d 54, 64, 935 P.2d 1321 (1997)).

To determine if reversal is warranted, we engage in a two-step inquiry. *State v. Bass*, 18 Wn. App. 2d 760, 802, 491 P.3d 988 (2021), *review denied*, 198 Wn.2d 1034 (2022). First, we "examine the facts and circumstances of the case to determine whether a court's conduct or remark rises to a comment on the evidence." *Id*. at 802-03. A remark may constitute a comment on evidence if the judge's personal feelings are implied. *Id.* at 803. Second, if we determine the trial court made an improper comment, we presume the comment is prejudicial, and the State must "'show that the defendant was not prejudiced, unless the record affirmatively shows that no prejudice could have resulted.'" *Id.* (quoting *Levy*, 156 Wn.2d at 723).

Here, during a midtrial hardship voir dire of juror 1 outside of the presence of other jurors, the judge characterized the case as "a major homicide case in this county." RP at 858. This comment is not a remark on the evidence. The comment does not instruct the jury that matters of fact have been established as a matter of law. The question is then whether characterizing a second degree murder trial as a "major homicide case in this county" conveys the judge's personal attitude toward the merits of the case.

Although the trial court's comment may have conveyed the judge's personal attitude about the seriousness of the case, it did not convey the judge's personal attitude about the merits of the case. The comment does not suggest something about the veracity of any witness, the importance

24

No. 56202-2-II

of any piece of evidence, or, more broadly, the strength of any party's case. As such, we hold that the comment did not constitute an improper judicial comment on evidence.

B.      *Prosecutorial Misconduct*

Bogdanov argues that the State engaged in prosecutorial misconduct (1) by asking if he was significantly stronger than NK and if he could have bear hugged her at any point in time, and (2) by eliciting irrelevant testimony regarding the contents of two vans. We disagree.

Where the defendant timely objects to prosecutorial misconduct, the defendant must prove that the challenged conduct was improper and prejudicial in the context of the entire trial. *State v. Zamora,* 199 Wn.2d 698, 708-09, 512 P.3d 512 (2022). However, when the defendant fails to object, the defendant must make a heightened showing of prejudice—that the prosecutor's conduct was so flagrant and ill-intentioned as to result in incurable prejudice. *Id.*

"'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." ER 401. But relevant "evidence may be excluded if its probative value is substantially outweighed by the danger . . . misleading the jury." ER 403. "'Evidence is relevant if a logical nexus exists between the evidence and the fact to be established.'" *State v. Pratt*, 11 Wn. App. 2d 450, 462, 454 P.3d 875 (2019), *aff'd*, 196 Wn.2d 849 (2021) (quoting *State v. Burkins*, 94 Wn. App. 677, 692, 973 P.2d 15 (1999)).

1. *Challenged Questions*

Bogdanov argues that the State engaged in prosecutorial misconduct by asking if he was significantly stronger than NK and if he could have bear hugged her at any point in time. To that

25

No. 56202-2-II

end, Bogdanov argues that this line of questioning misguided the jurors into believing that he "was in a present, rational state of mind," not a state of fight or flight. SAG at 3. We disagree.

The State has the burden to prove the absence of self-defense beyond a reasonable doubt if the defendant produces some evidence of self-defense. *State v. Woods*, 138 Wn. App. 191, 199, 156 P.3d 309 (2007).

Here, Bogdanov argued that his killing of NK was excusable and justifiable. During the cross-examination of Bogdanov, the State elicited that he was 6'2 and about 200 pounds. The State further elicited that NK was about 5'8 and 130 pounds. The State asked, "At least by appearances, you could tell that you were significantly stronger than her[?]" RP at 1538. Bogdanov said, "Yeah." RP at 1538.

Bogdanov did not object to the question. Later, the State asked, "You could have bear hugged her at any point in time, right?" RP at 1545. Bogdanov responded, "It was—that's kind of what I was trying to do. It wasn't working out. Nothing was working." RP at 1545. Bogdanov did not object. Because Bogdanov did not object, he must show that the State's conduct in posing the aforementioned questions was improper, and so flagrant and ill-intentioned as to result in incurable prejudice.

The challenged questions sought to produce highly relevant evidence, that Bogdanov had the strength and capability of restraining NK without killing her. Such evidence is highly relevant because it goes directly to meeting the State's burden of showing that the killing was not justified. Whatever likelihood such questions had of misleading the jury does not outweigh the substantial probative value of those questions. Consequently, we hold that the State's conduct in

26

No. 56202-2-II

posing the aforementioned questions was not improper. Thus, the State did commit prosecutorial misconduct in this regard.

2. *Evidence from the Vans*

Bogdanov argues that the State committed prosecutorial misconduct by introducing irrelevant evidence from the Ford Econoline and the GMC Savana vans, including a knife, a pair of handcuffs, a bloodstained shirt, and a beaded bracelet. We disagree.

There is evidence to suggest that Bogdanov could have been in a Nissan van, his own GMC van, or the Ford van during the night that he killed NK. But it is uncontested that Bogdanov was in the Audi when he killed NK.

There was no testimony that the contents of the Ford or the GMC van were transferred into the Audi before or after the incident. Nor is there evidence that any of the contents of either van were instruments in the crime or in Bogdanov's self-defense. Both of the vans were searched several months after the murder. In closing, the State argued that NK "might have been" in one of the vans for a brief period of time that morning. RP at 1678.

Because the nexus between the contents of the vans and Bogdanov's self-defense claim is purely conjectural, the contents of the vans were irrelevant. But the trial court admitted the aforementioned evidence over Bogdanov's objections. Bogdanov did not appeal this ruling. The State followed the trial court's ruling, and that ruling has not been challenged on appeal. Thus, the State's introduction of the challenged evidence was not improper.

Moreover, Bogdanov has not met his burden of showing that such conduct was prejudicial in the context of the entire trial. To meet his burden, Bogdanov argues that the knife, the pair of handcuffs, and the shirt with a spot of blood on it was used to make him look bad.

No. 56202-2-II

Bogdanov also claimed he was prejudiced when the State argued he could have used the pocketknives or other things instead of taking NK's life.

The State argued, outside the presence of the jury, that the handcuffs, pocketknife, or other things around could have been used as an alternative to deadly force. The jury was not exposed to that argument so it is not considered when determining whether any misconduct affected the jury's verdict.

The State did not suggest to the jury that the evidence was used in the crimes. The State's argument in closing was merely,

> Ladies and gentlemen, you've heard a lot about these searches of these vans that end up with not a lot of evidence. First of all, that is consistent with the testimony that you heard. What happened to [NK] didn't happen in those vans. [NK] might have been a passenger in one of those vans for a brief period of time that morning, but that was six months before those searches.
>
> So not finding her DNA in those vans is consistent with the evidence.

RP at 1678.

Any suggestion that Bogdanov could have used the pocketknives or handcuffs instead of the phone charging cable to restrain NK was at most, implicit, not explicit. And Bogdanov underscored the weakness of that testimony in closing by emphasizing the vans were not where the self-defense took place, and that evidence from the vans was not tied to the incident by DNA analysis or testimony. Under these circumstances, we hold that Bogdanov did not meet his burden of showing that the State committed misconduct or that the State's presentation of evidence from the van sufficiently prejudiced Bogdanov to warrant reversal.

28

No. 56202-2-II

C.       *Ineffective Assistance of Counsel*

Bogdanov argues that he received ineffective assistance of counsel because his counsel failed to acquire an expert witness "to testify about the [m]ale-female tran[s]fer characteristics." SAG at 3. We disagree.

"'[G]enerally the decision whether to call a particular witness is a matter for differences of opinion and therefore presumed to be a matter of legitimate trial tactics.'" *Matter of Lui*, 188 Wn.2d 525, 545, 397 P.3d 90 (2017) (internal quotation marks omitted) (quoting *In re Morris*, 176 Wn.2d 157, 171, 288 P.3d 1140 (2012)). But "depending on the nature of the charge and the issues presented, effective assistance of counsel may require the assistance of expert witnesses to test and evaluate the evidence against a defendant." *State v. A.N.J.*, 168 Wn.2d 91, 112, 225 P.3d 956 (2010).

To establish that counsel was deficient for failing to call an expert witness, the defendant must present supporting declarations from relevant expert witnesses to show what such experts would have testified to. *See Matter of Davis*, 188 Wn.2d 356, 376, 395 P.3d 998 (2017). Without such evidence, evaluating prejudice resulting from the failure to retain such experts is highly speculative. *Id.* When the claim is based on matters outside the trial record, we decline to consider such claims. *State v. Linville*, 191 Wn.2d 513, 525, 423 P.3d 842 (2018).

Even assuming that Bogdanov could show that the failure to call an expert to testify about the consequences of gender transitioning was deficient, he cannot show prejudice. Bogdanov does not present any evidence of what an expert witness would have said that could have changed the outcome of his trial. Consequently, any evaluation of prejudice would be

29

No. 56202-2-II

highly speculative. As such, we decline to consider this argument as it involves matters outside the trial record.[9]

D.      *Right to Present a Defense*

Bogdanov argues that the trial court erred by ruling that he could not admit evidence that NK had previously been shot. We disagree.

Defendants have a federal and state constitutional right to present a defense. U.S. CONST. amend. VI; WASH. CONST. art. I, § 22. We engage in a two-step review of evidentiary rulings that implicate the defendant's constitutional right to present a defense. *State v. Arndt*, 194 Wn.2d 784, 797, 453 P.3d 696 (2019). We first review whether the trial court abused its discretion regarding the evidentiary ruling. *Id.* Then, we review de novo whether that ruling violated the defendant's right to present a defense. *Id.* Where the trial court's ruling is manifestly unreasonable or based on untenable grounds, it abuses its discretion. *Id.* at 799.

"[W]hen assessing a self-defense claim, the trial court applies both a subjective and objective test." *State v. Read*, 147 Wn.2d 238, 242-43, 53 P.3d 26 (2002). Evidence that shows facts and circumstances known to the defendant that go to the reasonableness of the defendant's apprehension of danger is admissible. *State v. Burnam*, 4 Wn. App. 2d 368, 376, 421 P.3d 977 (2018). "It is well established that a victim's specific acts of violence, *if known by the defendant*, are admissible when the defendant asserts self-defense." *State v. Duarte Vela*, 200 Wn. App. 306, 326, 402 P.3d 281 (2017).

---

[9] We note that the appropriate way to raise an issue on appeal that requires additional evidence or facts not in the existing trial record is through a personal restraint petition. *Linville*, 191 Wn.2d at 525.

30

No. 56202-2-II

Where a trial court excluded evidence that the victim was associated with a homicide, Division Three held that it did not violate the defendant's right to present a defense because "[t]he mere fact that Ms. Sweet dated a man accused of murder and hid the murder weapon does not strongly imply that Ms. Sweet was violent. The prejudicial effect of excluding this questionable evidence is minimal." *Burnam*, 4 Wn. App. 2d at 378.

Here, Bogdanov attempted to introduce the evidence that NK had previously been a gunshot victim. Bogdanov's counsel explained that the testimony would have been that NK saw Bogdanov place his gun in the front. Then, NK disclosed to Bogdanov that "she did not like guns necessar[il]y, but she was okay with it because she had been shot." The trial court ruled that the evidence was not admissible because the probative value of the evidence was substantially outweighed by the danger of unfair prejudice.

In Bogdanov's SAG, he alleges additional facts that were not presented to the trial court about NK being a gunshot victim, including that NK was previously shot because she tricked someone about her gender identity. Apparently, Bogdanov claims to have learned the aforementioned fact and much more about NK during his time in jail. But because the additional factual allegations mentioned in his SAG were not before the trial court, we will not consider them in determining whether the trial court abused its discretion.[10]

We hold that the trial court did not abuse its discretion in excluding evidence that NK had previously been shot. The fact that NK had been shot does not suggest that she had the propensity for violence. As such, that fact is irrelevant. Even assuming that such evidence is

_____

[10] We cannot consider matters outside the record on direct appeal. *State v. McFarland*, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995).

No. 56202-2-II

marginally relevant, its probative value is substantially outweighed by the danger of unfair prejudice as it tends to create the illogical inference that victims of crime have a propensity for violence. Here, Bogdanov was able to advance his defense theories. We hold the exclusion of irrelevant evidence did not violate Bogdanov's right to present his defense.

CONCLUSION

We hold that the trial court's self-defense instruction was adequate. We remand for the trial court to strike the community custody provision imposing supervision fees. We reject each of Bogdanov's remaining arguments. And we otherwise affirm.

_____
Che, J.

We concur:

_____
Glasgow, C.J.

_____
Birk, J.[*]

---

[*] Sitting in Division II pursuant to RCW 2.06.040 by order of the Associate Chief Justice.