# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 57789-5-II |
| Respondent, | |
| v. | UNPUBLISHED OPINION |
| KERRY G. SMITH, | |
| Appellant. | |

CHE, J. — Kerry Glenn Smith appeals his conviction for first degree child molestation. Smith's step-granddaughter, IMR, reported that when she was around three years old, Smith told her to touch his penis, which she did. The State charged Smith with first degree child molestation and alleged an aggravating factor of abuse of a position of trust. At trial, IMR testified that Smith was wearing women's underwear when he told her to touch his penis. The jury instructions used IMR's initials. The jury convicted Smith. The trial court ordered Smith to pay legal financial obligations (LFOs) including community custody supervision fees and a victim penalty assessment (VPA).

Smith argues on appeal that (1) the State committed impermissible misconduct when it referred to Smith wearing women's V-neck shirts and underwear at the time of the crime, (2) the trial court erred when it commented on the evidence by using the child victim's initials in a to-convict instruction, and (3) the trial court erred when it ordered Smith to pay certain LFOs.

We hold (1) the State's elicitation of testimony and argument regarding Smith's clothing was neither improper nor flagrant and ill-intentioned, (2) the use of IMR's initials in the to-convict instruction did not qualify as a judicial comment, (3) the community custody supervision fees should be stricken, and (4) VPA should be stricken.

Accordingly, we affirm Smith's conviction but remand for the trial court to strike the community custody supervision fees and VPA.

FACTS

Smith is the stepfather of IMR's mother. Smith lived in a trailer near IMR's family. Smith began regularly babysitting IMR at Smith's residence when IMR was around three years old. This included overnight stays. When IMR was about five years old, IMR's family moved away so babysitting became less frequent.

When IMR was 13 years old, she told her parents that she remembered something had happened with Smith when she was younger. Detective Gerald Swayze watched a child interviewer speak to IMR. During the interview, Swayze saw IMR draw a picture of what he believed to be a "penis pump."[1] Rep. of Proc. (RP) (Nov. 30, 2022) at 251.

The State charged Smith with first degree child molestation and alleged an aggravating factor of abuse of a position of trust. The case proceeded to a jury trial.

IMR was 17 years old at the time she testified at trial. She testified about events that occurred when she was roughly three years old. IMR described Smith wearing "short-sleeve V-necks" that were each one solid color and "granny panties" to bed when she would stay

---

[1] A device consisting of a plastic tube, pump, and band that fits over the penis, which can help a person achieve an erection. *Penis Pump*, MAYO CLINIC, https://www.mayoclinic.org/tests-procedures/penis-pump/about/pac-20385225 (last visited Apr. 17, 2024).

overnight at his trailer. RP (Dec. 5, 2022) at 324-25. Smith did not object. She remembered at least two or three incidents of touching Smith's penis because he was wearing different colored shirts during each incident.

IMR recalled an incident when Smith was on his bed wearing underwear. IMR was standing on the ground, leaning against the bed, and they were watching television. Smith's underwear was pulled down around his thighs. Smith told IMR to touch his penis, so she did. IMR remembered that after she would touch Smith's penis, generally, Smith would go into the bathroom and "finish[]" in a "weird container." RP (Dec. 5, 2022) at 331.

The State asked IMR's mother about Smith's clothing. The mother stated that Smith wore "women's underwear sometimes and also women's tee-shirts." RP (Dec. 5, 2022) at 281. Swayze testified that during an interview after Smith's arrest, Smith explained that he wore women's underwear because of "a [medical condition] in his belly button and the elastic . . . irritate[d] it less." RP (Nov. 30, 2022) at 259. Smith did not object to the testimony. During the police interview and at trial, Smith acknowledged wearing women's V-neck shirts because he could get a pack of the shirts with a friend's discount.

Swayze testified that he showed Smith IMR's drawing from her child interview. Swayze stated that Smith identified the drawing as a penis pump and acknowledged he owned one at the time of his arrest but not ten years earlier. When Smith testified at trial, he denied owning a penis pump at any time and denied identifying IMR's drawing as one of a penis pump.

During his testimony, Smith denied having any inappropriate contact with IMR. Smith claimed that IMR could have "accidently grabbed [his penis] when digging for change in his pocket," or that it "could have happened in his sleep." RP (Nov. 30, 2022) at 257, 264. Smith

denied ever sleeping in his underwear with IMR. Smith said IMR would sleep on his bed once in a while. He said that when she would sleep under the covers, he would sleep on top of the covers because he wanted a barrier from IMR's bed-wetting tendencies.

Throughout the trial, IMR was referred to by name and a nickname. However, the to-convict jury instruction referred to IMR by her initials. The instruction provided that to convict Smith of first degree child molestation, the jury had to find, in addition to other elements, that "I.M.R. was less than twelve years old at the time" and that "I.M.R. was at least thirty-six months younger" than Smith. Clerk's Papers at 45. Smith raised no objection to this instruction.

During closing argument, the State told the jury, "[IMR] remembers his underwear. She remembers different tee-shirts. She is certain that this happened at least once but she feels like it might have been more because she remembers different tee-shirts." RP (Dec. 5, 2022) at 421. Smith did not object.

The jury found Smith guilty as charged. The trial court imposed a standard range sentence. The trial court did not make any findings at sentencing about whether Smith was indigent, and imposed community custody supervision fees and a VPA as part of his sentence.

Smith appeals.

## ANALYSIS

### I. PROSECUTORIAL MISCONDUCT

Smith argues the State committed misconduct throughout the trial by relying on gender nonconforming evidence to secure Smith's conviction. Smith argues that evidence of his clothing was irrelevant to the commission of the crime charged and thus, improper. Specifically, Smith contends that the State's introduction of gender nonconforming evidence suggested Smith

was a sexual deviant and was an appeal to the jurors' potential LGBTQ+ and gender nonconforming prejudices. We disagree.

A.     *Legal Principles*

In prosecutorial misconduct claims, the defendant must prove that the prosecutor's conduct was both improper and prejudicial. *State v. Emery*, 174 Wn.2d 741, 756, 278 P.3d 653 (2012). The challenged conduct is reviewed "'in the context of the whole argument, the issues of the case, the evidence addressed in argument, and the instructions given to the jury.'" *State v. Gouley*, 19 Wn. App. 2d 185, 200, 494 P.3d 458 (2021) (quoting *State v. Scherf*, 192 Wn.2d 350, 394, 429 P.3d 776 (2018)).

A defendant who does not object to the prosecutor's remarks waives their prosecutorial misconduct claim unless they show that (1) the prosecutor's comments were improper, (2) the comments were both flagrant and ill-intentioned, (3) a curative instruction could not have obviated the effect of the improper comments, and (4) it was substantially likely the misconduct affected the verdict. *Id.* at 201.

In evaluating whether a nonobjecting defendant has overcome waiver, we "focus less on whether the prosecutor's misconduct was flagrant or ill intentioned and more on whether the resulting prejudice could have been cured." *Emery*, 174 Wn.2d at 762. When a defendant who does not object to the prosecutor's remarks fails to demonstrate that the improper remarks were incurable, the claim "necessarily fails, and our analysis need go no further." *Id.* at 764.

Evidence is relevant if it has any tendency to make the existence of any fact of consequence to the determination of the action more or less probable than it would be without the evidence. ER 401. Prosecutors have "wide latitude to argue reasonable inferences from the

evidence, including evidence respecting the credibility of witnesses" in closing argument. *State v. Thorgerson*, 172 Wn.2d 438, 448, 258 P.3d 43 (2011). But a prosecutor commits misconduct if they present a derogatory depiction of the defendant. *State v. Walker*, 182 Wn.2d 463, 478, 341 P.3d 976 (2015).

B.      *The Evidence and Comments in This Case*

Here, Smith did not object to the State's elicitation of testimony regarding Smith's clothing during witness testimony nor to the State's references to such clothing during closing argument. Thus, Smith waived his prosecutorial misconduct claim unless he can show that the prosecutor's comments were improper, flagrant, and ill-intentioned; no curative instruction could have remedied their effect; and the comments were substantially likely to affect the verdict. *Gouley*, 19 Wn. App. 2d at 201.

Smith first asserts that the prosecutor committed misconduct by eliciting testimony about his clothing. But evidence that Smith wore women's V-neck shirts and underwear during the period Smith babysat IMR was relevant to corroborate IMR's account of the crime. Because of IMR's young age at the time of the crime and Smith's contradictory testimony denying intentionally and inappropriately touching IMR or ever sleeping in his underwear with IMR, IMR's description of Smith's sleeping garments tended to establish the fact that IMR saw Smith in his underwear in bed with her. Other witnesses' testimony corroborating Smith's undergarments further established the likelihood that IMR's version of events was accurate. Because the evidence about Smith's clothing was highly probative of the strength of IMR's memory, the State did not elicit improper testimony on that subject.

Smith next contends that the prosecutor's comments about his clothing during closing argument constituted misconduct. In closing argument, the State noted that IMR "remembers his underwear" and "is certain that this happened at least once but she feels like it might have been more because she remembers different tee-shirts." RP (Dec. 5, 2022) at 421. The State did *not* mention that Smith's clothing and underwear were women's clothing, and the reference to Smith's clothing was fleeting and not repeated.

Viewed in context, general references to Smith's clothing in closing argument by the prosecutor were made to argue the inference that IMR was credible based on evidence admitted at trial. IMR recalled what shirts and underwear Smith wore during the commission of the crime, and Smith confirmed that he did indeed wear such things, though he denied ever sleeping in his underwear with IMR. The references were to relevant, corroborating evidence and spoke to IMR's credibility and memory. The State's comments were not improper.

Even if Smith had demonstrated that the remarks he challenges were improper, he fails to show the prosecutor's conduct was so flagrant and ill-intentioned that an instruction could not have obviated any prejudice. As established above, the State elicited testimony about highly relevant, corroborative, and probative evidence, and argued a permissible inference of IMR's credibility from that evidence. The record does not support that the State elicited the testimony to distinguish Smith based on gender nonconforming characteristics or "othering."[2] Specifically, Smith does not show that the State drew the jury's attention to Smith's wearing of women's

---

[2] To "other" a person is to use rhetoric that labels that person as someone outside the moral community in order to induce a negative emotional response towards them. Ryan Patrick Alford, *Appellate Review of Racist Summations: Redeeming the Promise of Searching Analysis*, 11 MICH. J. RACE & L. 325, 335 (2006).

shirts or underwear in an appeal to their implicit or explicit bias or prejudice and that he was "othered" as a result. In consideration of the broader context of the trial, the State's intended purpose was to elicit relevant, corroborating evidence and argue a permissible inference that IMR was credible based on the evidence admitted. Smith does not show how the State's conduct was flagrant or ill-intentioned.

Lastly, Smith asks this court to find the prosecutor's conduct per se prejudicial under *State v. Bagby*, 200 Wn.2d 777, 522 P.3d 982 (2023). We decline to reach this issue because we determine above that the prosecutor's references to Smith's clothing served a proper purpose.

Smith does not show that the testimony elicited by the State or its comments during closing argument related to his clothing and underwear, none of which Smith objected to, were improper. Even if the State's elicited testimony and closing arguments were improper, they were not flagrant or ill intentioned, nor incurable by a curative instruction. Thus, Smith's prosecutorial misconduct claim is waived and his arguments fail.

## II. JUDICIAL COMMENT ON EVIDENCE

Smith argues that the trial court's to-convict instruction was an impermissible comment on the evidence because the use of the victim's initials suggested to the jury that the court considered IMR a victim in need of protection and that Smith was guilty of an offense against the victim. We disagree.

A.      *Legal Principles*

We review a trial court's choice of jury instructions for an abuse of discretion, but the inquiry of whether an instruction comprises a comment on the evidence is reviewed de novo. *State v. Bogdanov*, 27 Wn. App. 2d 603, 624, 532 P.3d 1035, *review denied*, 2 Wn.3d 1008

(2023). Under article IV, section 16 of the Washington Constitution, a judge is barred "from expressing to the jury [their] personal attitudes regarding the merits of the case or instructing the jury that issues of fact have been established as a matter of law." *Gouley*, 19 Wn. App. 2d at 197. We presume that such judicial comments are prejudicial. *Id.*. Unless the record affirmatively shows no prejudice could have transpired, the State has the burden of showing such comments did not prejudice the defendant. *State v. Levy*, 156 Wn.2d 709, 723, 132 P.3d 1076 (2006).

Generally, we will decline review of a claim of error not raised at the trial court, but a manifest error affecting a constitutional right is reviewable for the first time on appeal. RAP 2.5(a) and (a)(3). A claimed error based on a judicial comment is of constitutional magnitude. *Levy*, 156 Wn.2d at 719-20. However, not all constitutional errors are reviewable under RAP 2.5. *State v. Kirkman*, 159 Wn.2d 918, 934, 155 P.3d 125 (2007).

To determine whether the error was manifest, the defendant must show actual prejudice—how the alleged error "actually affected" their rights in the context of trial. *State v. McFarland*, 127 Wn.2d 322, 333, 899 P.2d 1251 (1995). Put differently, a showing of actual prejudice requires a "'plausible showing by the [appellant] that the asserted error had practical and identifiable consequences in the trial of the case.'" *State v. O'Hara*, 167 Wn.2d 91, 99, 217 P.3d 756 (2009) (alteration in original) (internal quotation marks omitted) (quoting *Kirkman,* 159 Wn.2d at 935).

9

B.      *The Trial Court's Use of IMR's Initials in the To-Convict Instruction Did Not Constitute a Judicial Comment on the Evidence*

Though a judicial comment is an error of constitutional magnitude that a defendant may raise for the first time on appeal, use of initials in a to-convict instruction does not qualify as a judicial comment.  In *State v. Mansour*, the defendant challenged his first degree child molestation conviction, arguing that using the child victim's initials constituted a judicial comment on the evidence.  14 Wn. App. 2d 323, 329, 470 P.3d 543 (2020).  Division One held that the use of initials to identify the victim of child molestation in the to-convict instruction was not a judicial comment on the evidence because the name of the victim was not a factual issue requiring resolution, and a juror would be unlikely to presume that the child victim was a victim because of the use of their initials.  *Id.* at 329-30.

Like in *Mansour*, the trial court's use of IMR's initials in the to-convict instruction did not constitute a judicial comment on the evidence.  Similarly, IMR's name was not a factual issue requiring resolution.  IMR's identity was not concealed; IMR was referred to by her full name, first name, and nickname throughout trial.  A juror would likely not presume that IMR was a victim needing protection merely because the trial court used her initials in the to-convict instruction.  Therefore, Smith fails to show that the trial court's use of IMR's initials in the to-convict instruction constituted a judicial comment or was an error of constitutional magnitude warranting review for the first time on appeal under RAP 2.5(a)(3).

Thus, Smith fails to make the required showing under RAP 2.5(a)(3) that any alleged error resulting from the instruction was a manifest error affecting a constitutional right

warranting review for the first time on appeal. We hold that the use of IMR's initials in the to-convict instruction did not qualify as a judicial comment.

### III. LEGAL FINANCIAL OBLIGATIONS

A.      *Victim Penalty Assessment*

Smith argues, and the State concedes, that this court should strike the VPA because of a recent amendment to RCW 7.68.035, which requires the waiver of a VPA if the trial court finds the defendant is indigent. We accept the State's concession. Under the amended RCW 7.68.035(4), if a defendant is indigent at sentencing, trial courts must waive any VPA imposed prior to the effective date of the amendment. *State v. Ellis*, 27 Wn. App. 2d 1, 16, 530 P.3d 1048 (2023). This amendment applies to cases on direct appeal. *Id.* We interpret the State's concession as conceding that, on remand, the court would necessarily find indigency under RCW 10.101.010(3). Therefore, we remand for the trial court to strike the VPA.

B.      *Community Custody Supervision Fees*

Smith additionally argues this court should strike the community custody supervision fees because such fees are discretionary LFOs and Smith is indigent. Effective July 2022, RCW 9.94A.703(2) no longer allows trial courts to impose community custody supervision fees. *Ellis*, 27 Wn. App. 2d at 17. This amendment applies to cases pending on appeal. *Id.* Although the amendment to RCW 9.94A.703 regarding community custody supervision fees took effect after Smith was sentenced, it applies to Smith because his case is on direct appeal. *Id.* Therefore, we remand for the trial court to strike the community custody supervision fees from Smith's judgment and sentence.

No. 57789-5-II

CONCLUSION

We affirm Smith's conviction but remand for the trial court to strike the community custody supervision fees and VPA.[3]

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Che, J.

We concur:

_____
Glasgow, J.

_____
Cruser, C.J.

---

[3] While this appeal was pending, the State moved for permission to modify a sexual assault protection order (SAPO) issued in this case. Under RAP 7.2(e)(2), a post-judgment motion must "first be heard by the trial court, which shall decide the matter. If the trial court determination will change a decision then being reviewed by the appellate court, the permission of the appellate court must be obtained prior to the formal entry of the trial court decision." RAP 7.2(e)(2). In light of our resolution of this appeal, the parties are free to pursue amendment of the SAPO with the trial court.

12